**TRANS–STATE PAVERS,
INC., Appellant,**

v.

**N.L. HAYNES, Clayton Busby, Government Employee's Insurance
Company, Appellees.**

No. 09–90–009 CV.

Court of Appeals of Texas,
Beaumont.

May 2, 1991.
Rehearing Denied May 15, 1991.

Elizabeth Pratt, Mehaffy & Weber, Beaumont, for appellant.

Blair Bisbey, Seale, Stover, Coffield, Gatlin & Bisbey, Jasper, for appellees.

Before WALKER, C.J., and
BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from the 88th Judicial District Court of Hardin County, Texas, the Honorable Joe Bob Golden sitting as visiting judge for the Honorable Earl B. Stover in Cause No. 29,627. Trans–State Pavers, Inc. is appellant and N.L. Haynes and Clayton Busby are appellees. Appellee Government Employee's Insurance Company became a party after judgment. Throughout this opinion appellee Government Employee's Insurance Company shall be referred to as GEICO.

Appellant comes to us from a judgment in favor of appellees arising out of a personal injury suit involving a one—vehicle automobile accident.

The automobile accident occurred on November 28, 1987 some time around 10:00 p.m. on Farm to Market Road 770 in Hardin County, Texas. The record reveals that appellees were returning to Kountze, Texas from a trip to Houston, Texas. Appellant, Trans–State Pavers, Inc., had been working under contract to the Texas Highways Department, improving a section of the highway where this accident occurred. Appellees alleged and contended throughout the trial that the accident was caused by pot holes in the roadway.

Suit was originally filed against appellant by appellees. Appellant counterclaimed for contribution against N.L. Haynes, appellee and driver of the vehicle, pleading contributory negligence on the part of both Haynes and Busby. Busby was a passenger in Haynes' vehicle. Appellant's counter-claim was dismissed by order of the trial court after Haynes and Busby reached a monetary settlement of Busby's claim against Haynes. This trial

court order was signed by the Honorable Earl B. Stover.

On September 11, 1989, the case proceeded to trial, the only parties being appellant, Trans–State Pavers, Inc. and appellees, Busby and Haynes. By virtue of post-verdict and post-judgment action by the trial court, we have an additional appellee before us, that being GEICO which was not a party to this case when tried. On September 12, 1989, the jury reached a verdict finding Haynes 25% negligent, appellant 75% negligent, also finding damages for Haynes and Busby. The jury verdict included an award of $13,000.00 for property damage to the vehicle owned by appellee Haynes.

In a timely manner, appellant moved for judgment Non Obstante Veredicto and to have the trial court disregard certain jury findings. Following entry of judgment, appellant also moved for a new trial. The trial court overruled all of appellant's motions. On September 19, 1989, exactly seven days after the jury's verdict was returned, counsel for Haynes and Busby moved the trial court to permit the filing of a trial amendment which in effect added GEICO as a party plaintiff. Appellant filed detailed written opposition in response to this trial amendment, however, on October 4, 1989, the trial court signed an order permitting counsel to file such amendment. Through inadvertence or otherwise, this order along with the judgment on the verdict was dated September 4, 1989, same being amended by order Nunc Pro Tunc signed the 23rd of January, filed the 24th of January, 1990. It nevertheless appears from the record that the trial court signed the order granting leave for the trial amendment to be filed on October 4, 1989. Final judgment was signed and entered in the minutes of the civil court at Volume 33, Page 438 on October 4, 1989.

Thus the judgment of the court was entered for all purposes on October 4, 1989, date stamped October 5th and the trial amendment was not filed until the next day, October 5, 1989, same being granted October 4th. The actual order of events gleaned from the record shows that the trial amendment was filed one minute prior to the order granting leave to do so. In any event, the judgment was entered one day before the other filings. Appellant contends that at no time did it receive any notice before judgment was signed or entered that the court had granted leave for the trial amendment which simply added GEICO as a party.

Appellant has properly perfected its appeal from the trial court judgment setting out eight specific points of error.

Point of error number one contends that the trial court committed harmful error in excluding evidence that appellees Haynes and Busby had consumed alcoholic beverages before the accident.

Early in the trial we find the following exchange between appellee Haynes and his counsel:

Q [By Mr. Bisbey] Mr. Haynes, at the time that this wreck itself actually occurred were you on any kind of medication or anything else that would affect your ability to safely operate that vehicle?

A [By Mr. Haynes] No, I wasn't.

The record is clear and undisputed that appellees Haynes and Busby both consumed quantities of alcoholic beverages prior to the accident in question. The trial court repeatedly excluded any and all offers of evidence or testimony relating to the use or consumption of alcoholic beverages by these two appellees. Appellant obviously contends that the exclusion of such material evidence was very critical to the issues of negligence and proximate cause and furthermore contend that such exclusion was calculated to and probably did cause rendition of an improper verdict resulting therefore in an improper judgment based on that verdict.

## EXCLUDED TESTIMONY

Appellant sought to defend this lawsuit with strong reliance on the contributory negligence of N.L. Haynes, appellee, the driver of the vehicle. This defense was properly plead but all evidence relating to

Haynes' consumption of alcohol was excluded from the jury's consideration.

Appellant did, by Bill of Exceptions, preserve the testimony which appellant contends the jury should have been permitted to consider. In appellant's cross-examination of appellee Haynes on Bill of Exceptions, it was established that:

(1) Haynes and Busby had been drinking during the afternoon before the accident. Haynes admitted to drinking at least two beers during his five to seven hour visit at his cousin's house in Houston and he testified that Busby drank a like amount;

(2) After the accident, Haynes was given a field sobriety test by a Department of Public Safety Officer;

(3) After the DPS Officer observed Haynes' attempt to pass the field sobriety test, Haynes was arrested, handcuffed and taken to the Hardin County jail;

(4) Haynes thereafter registered a .07 on the breathalyzer test administered by the officers;

(5) The accident occurred sometimes after 10:00 p.m. Department of Public Safety Officer Hawthorne arrived on the scene at approximately 10:45 p.m. and the breathalyzer was not administered until after 11:00 p.m. At that time, Haynes' blood alcohol content was .07;

(6) Haynes claimed that he could not remember the last time he had anything to drink on the day of the accident, but that he had not had anything to drink on the return trip from Houston. He testified that he had been on the road returning from Houston to Kountze for over one and one half hours at the time of the accident;

(7) The police did not arrive until at least 30 minutes after the accident;

(8) Haynes testified that he could not agree that it would be improper conduct to get behind the wheel of a new vehicle to drive back country roads after drinking two beers.

Appellant, in its desperate attempt to have the jury hear all relevant and material evidence, called Officer Brian Hawthorne of the Texas Department of Public Safety and completed a Bill of Exceptions preserv-

ing this officer's testimony. It was Officer Hawthorne's position that N.L. Haynes was driving in an impaired condition and that his impaired condition was one of the two primary causes of the one-vehicle accident.

Bearing in mind appellant's defense of contributory negligence, we look to the content of Officer Hawthorne's testimony excluded by the trial judge:

(1) Officer Hawthorne had investigated 200 to 300 accidents and had attended 200 to 300 hours of formal training in accident investigation during his five years of service with the Texas Department of Public Safety;

(2) Officer Hawthorne's accident investigation training prepared him to administer field sobriety tests to determine whether someone is functioning as they should be;

(3) Officer Hawthorne investigated the November 28, 1987 accident involving Haynes and Busby;

(4) When Officer Hawthorne arrived at the scene and spoke with Haynes, Haynes "emitted a strong odor of alcoholic beverage on his breath". Officer Hawthorne then administered a standard field sobriety test calculated to estimate Haynes' blood alcohol concentration;

(5) Blood alcohol concentration is directly related to such things as a person's ability to react while driving a motor vehicle;

(6) After administering the test, *Officer Hawthorne concluded that Haynes was impaired;*

(7) Officer Hawthorne arrested Haynes and asked that he submit to a breath test at the Hardin County Sheriff's Department;

(8) The result of the breath test was a *finding of .07 blood alcohol concentration;*

(9) The average person's body eliminates alcohol at the rate of approximately .02 per hour;

(10) Based on the officer's investigation, Hawthorne felt that Haynes may have been impaired by alcohol at the time of the accident which is why Haynes was

taken into custody for further investigation;

(11) Officer Hawthorne prepared an investigation report stating the two primary factors which contributed to the accident. These two factors were:

(a) Haynes was driving at an unsafe speed (for which Haynes received a citation);

(b) Haynes had been drinking;

(12) The official Department of Public Safety report form contained a space for other factors which contributed to the accident and none were listed.

■ Ms. Regi Martin, counsel for appellant, made repeated efforts to prevail upon the trial judge to allow all the heretofore referenced evidence as probative to the question of contributory negligence, proximate cause and perhaps sole cause on the part of appellee Haynes. Ms. Martin explained to the trial judge that appellee's counsel opened the door by inquiring of Haynes as to whether he was "on anything" which could have impaired him on the night in question.

We find interesting the following discourse between counsel for appellant and counsel for appellees and the court:

BY MS. MARTIN: Your Honor, at this point I would move the court to admit the evidence concerning the consumption of alcohol especially in light of the fact that Mr. Bisbey opened the door by inquiring of Mr. Haynes as to whether he was on any medication or anything else that would have impaired him on the night in question.

I believe that entitles me to show for the purpose of the jury considering whether he was impaired or not, the fact that he had been drinking and had taken a field sobriety test and was taken in for a breathalyzer.

I think I am entitled to show that he had been drinking at least to that extent because of the question asked by Mr. Bisbey. It leaves the Jury with the impression that he hadn't been doing anything all day to impair his ability to drive.

It's a self-serving statement and this is the only recourse I have, to be able to show that he had been drinking.

BY MR. BISBEY: Well, I disagree, Judge. Obviously the prejudicial impact of that type of evidence on a Jury that has got Panel members who are Pentecost and Church of Christ members greatly outweighs any probative value it would have, particularly when the breathalyzer reading showed he was under the presumption level of intoxication. There is absolutely no evidence that he was intoxicated or was impaired in his faculties or facilities at the time of the occurrence made the basis of the action.

BY MS. MARTIN: My response to that is, your Honor, to the extent it's prejudicial, it is far more prejudicial to allow Mr. Bisbey to ask on one hand the question, and that is, had you taken anything that impaired you and then not allow me to rebut that type of questioning by showing that he had had beers and he still had a blood alcohol content and let the jury weigh that in light of his previous testimony.

BY THE COURT: The ruling still stands. As far as both of the things that we are here at this time outside of the presence of the jury concerning the Motion in Limine with regard to the property damage claim and the two beers, the ruling still stands as it was.

At this juncture we note that the trial judge had made no ruling at the Motion in Limine hearing regarding the consumption of alcohol question as that ruling was specifically reserved for trial. If the ruling "still stands as it was", then there was no ruling. We can only accept this no ruling as sustaining plaintiffs' Motion in Limine to exclude evidence of alcohol consumption.

Officer Hawthorne was called to testify by plaintiff's Haynes and Busby. The focus of Officer Hawthorne's testimony on direct examination was primarily upon the *physical scene* where the accident happened and the speed of the vehicle. On cross-examination by Ms. Martin, we find the following question and answer response significant:

Q There is a place on your report for you to list the factors that you feel caused or contributed to that accident. Is there not?

A Yes, ma'am.

Q They list some 72 factors or conditions, correct?

A Yes, ma'am.

Q You do not list the condition of the road in that section of the report as having been a factor or condition that in *your opinion caused or contributed to* this accident, do you?

A No ma'am, I don't.

After several more questions and answers, Ms. Martin again requested to approach the bench at which time the following discussion between Ms. Martin and the court occurred:

BY MS. MARTIN: Your Honor, at this time I would simply re-offer his testimony in our Bill of Exceptions.

It is extremely unfair to handcuff me like this. The Jury is sitting here listening to an officer in uniform testify about road conditions and not allow me to prove up what in his opinion caused the accident. He listed two factors. I am not allowed to produce testimony to show what he thought caused the accident.

He gave opinion testimony about the condition of the road, none of which he felt at the time contributed to the accident. I would re-offer his testimony concerning the condition of the driver at the time of the accident.

BY THE COURT: Same ruling.

BY MS. MARTIN: Am I overruled?

BY THE COURT: Yes.

■ The best we can conclude as a basis for the trial court's continued refusal to allow such probative and admissible evidence was a fear of what certain Pentecostal and Church of Christ jurors would make of such evidence. Appellees apparently convinced the trial judge that the religious make up of the jury panel would create such a bias and prejudice as to outweigh the probative value of the evidence.

■ Any evidence which tends to prove or disprove any material fact involved in the issue being tried or throws light on the occurrence involved, is relevant and material. *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 699–700 (1941) *cert. denied* 315 U.S. 8, 62 S.Ct. 418, 86 L.Ed. 579 (1942); *Rego Company v. Brannon*, 682 S.W.2d 677, 682 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We find it elementary that the evidence of Haynes' alcohol consumption was relevant and material under this standard. TEX.R.CIV.EVID. 401 and 402. Appellees' only substantive objection to the evidence was the prejudicial impact that such evidence would have on jurors who were *members of* the Pentecostal Church or Church of Christ congregations. Does this then mean that had the jury been free of all Pentecostal and Church of Christ members, that such evidence would have been admitted as not being so prejudicial as to outweigh its probative value? If it is so well known and so accepted that members of the Pentecostal Church and the Church of Christ cannot be fair and impartial where the subject of alcohol or alcoholic beverages are concerned, appellees should have cured their concerns at voir dire, especially in view of the trial court's deferring its ruling on the Motion in Limine. The trial court's exclusion of this relevant and material evidence, was based more on speculation than on sound legal principle.

It is clear that once appellees opened the door to the introduction of such evidence, that the trial court could not in fairness close that door by preventing appellant from rebutting and clarifying the patently unfair impression created. *See, McCrory's Stores Corp. v. Murphy*, 164 S.W.2d 735, 742 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w.o.m.). Clearly the "opening of the door" is not the only reason such evidence is admissible. The proffered evidence was admissible in and of itself as bearing directly to the defense of contributory negligence. Absent an objection on competency, Officer Hawthorne's evaluation of Haynes' impaired state was sufficient to establish the relevancy of Haynes' drinking. This becomes even clearer from the questioning of Officer Hawthorne regard-

ing factors the officer considered in evaluating the cause of the accident. To solicit such an evaluation and then object to the conclusions drawn therefrom is improper. *Smith v. Rozelle*, 282 S.W.2d 122 (Tex.Civ. App.—Waco 1955) writ ref'd n.r.e., 324 S.W.2d 627 (Tex.1959); *Young v. Texas & Pacific Railway Co.*, 347 S.W.2d 345 (Tex. Civ.App.—El Paso 1961, no writ).

The courts in this State have long recognized that evidence of alcohol consumption is relevant and admissible evidence bearing on the issues of causation and contributory negligence. Our Supreme Court has stated:

> The jury was called upon to decide this issue from a preponderance of the evidence, and had the right to consider the evidence of [plaintiff's] intoxication along with all other material evidence and circumstances in determining the issue.... Evidence of intoxication is an evidentiary fact to be considered by the jury, or trier of the facts, in determining whether or not a person is guilty of some act of contributory negligence, but the fact of intoxication alone would not convict the deceased of negligence.

*Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 798 (Tex.1951).

■ We make it clear, however, that evidence of alcohol consumption standing alone is inadmissible unless there is further evidence of negligence or improper conduct on the part of the user as is apparent in the case before us. *Dorman v. Langlinais*, 592 S.W.2d 650 (Tex.Civ.App.—Beaumont 1979, no writ).

■ Evidence of alcohol consumption by both Haynes and Busby was also admissible for impeachment purposes since Haynes unequivocally denied being "on anything else" which would have affected his ability to drive safely. Tex.R.Civ.Evid. 607, 613.

■ We find that the trial court's refusal to admit this evidence was clearly error and that appellant preserved that error throughout the trial. The question is whether or not the jury could have reached a different verdict had the excluded evidence of Haynes' alcohol-related impairment been before them? We are of the opinion that the jury received such an unbalanced and unfair picture from the evidence, that it lead them to an improper verdict. When we review the record, we contrast what the jury heard with what the jury did not hear:

First, the jury heard appellees' counsel ask Haynes if he was on any kind of medication or anything else that would affect Haynes' ability to safely operate his vehicle. The jury heard Mr. Haynes say, "No I wasn't".

The jury never was made aware that Haynes admitted that he and Busby had each consumed at least two beers. The jury never knew that when the Department of Public Safety Officer arrived some thirty minutes after the accident, Haynes "emitted a strong odor of alcoholic beverage on his breath."

Second, the jury heard Mr. Haynes testify about pot holes in the road, about his ability to handle and control his vehicle, about the good condition of his vehicle before the accident, about his careful attention to keeping a speed of no more than fifty miles per hour, and about his sudden inability to control the vehicle after he reached the "big pot holes" in the road and veered onto the shoulder of the highway.

The jury never heard evidence that Officer Hawthorne had reason to believe that Haynes was driving under the influence of alcohol and that the officer asked Haynes to attempt a field sobriety test. The jury never heard that Haynes failed the field sobriety test.

Third, the jury heard Haynes testify that he did not see the pot holes until he was right up on them, that he tried to slow down, but it was too late, and his vehicle veered into the side. The jury also heard Haynes testify that he had not seen any construction signs along the road, nor any other evidence of construction until he reached the "spot where it was all torn up."

The jury never heard that Haynes could not examine the roadway because he was

under the influence of alcohol, that he was, in the opinion of Officer Hawthorne, "impaired", and because shortly thereafter he was arrested and taken to the Sheriff's Office for a breath test.

Fourth, the jury heard appellees' counsel obtain testimony from Officer Hawthorne that Haynes had told him he "went onto a dirt portion of the highway which was bumpy to him and he was unable to control the vehicle". Appellees also elicited testimony that the road was rough and had numerous pot holes and that there were no street lights. The jury, however, never knew that Haynes' ability to control his vehicle and react appropriately may have been impaired by his alcohol consumption. The jury was excluded from hearing Officer Hawthorne's opinion as to one of the two primary causes of the accident, Haynes' alcohol-related impairment.

Fifth, appellees' counsel used the excluded evidence, to argue to the jury, "I don't think there's any evidence that Haynes did anything wrong under the circumstances. Maybe if he had been driving another kind of car, it wouldn't have turned over.... He had a right to be out there driving that car ... It was the road, the condition of the road that caused the wreck."

It is apparent to this Court that the exclusion of the evidence regarding Haynes' consumption of alcohol and its possible impairment to his faculties resulted in simple basic unfairness to appellant. The exclusion of this evidence did, as Ms. Martin contended, so "handcuff" appellant that the jury could have and probably would have rendered a different verdict had the evidence not been excluded.

The trial court erred in refusing to admit evidence on the question of Haynes' alcohol-induced impairment as same bore directly upon the claim of appellee Busby. This Court in *Burke v. Union City Transfer*, 623 S.W.2d 150 (Tex.App.—Beaumont, 1981, no writ), recognized that a passenger who voluntarily enters a vehicle knowing the driver to be under the influence of intoxicants may be found to be comparatively negligent. Appellant tendered an issue concerning Busby's negligence, but the trial court refused same. Since the trial court had excluded all evidence relating to the consumption of alcohol, we cannot say it was error to refuse the requested issue because there was in fact no evidence before the jury to support such issue. The error lies in the exclusion.

Given all of the evidence, the jury probably would not have concurred with the view that Haynes had done nothing wrong and that he had an absolute right to be on that highway. Given all the evidence, the jury probably would have concluded that Busby was also negligent.

We conclude that the exclusion of the evidence relating to alcohol consumption and impairment was calculated to and did cause rendition of an improper judgment. Appellant's point of error number one is sustained.

As a result of our conclusion on point of error number one which calls for a reversal and remand of this case for new trial, we find no necessity in addressing points of error five, six, seven or eight. We shall, however, address points of error two, three and four since we reverse and render on those points.

■ Points of error two, three and four complain of trial court error in entering judgment in favor of GEICO, which was not a party to the case; permitting appellee GEICO to be added as a party after the verdict and after judgment had been entered; and submitting a jury question on property damage because the question was not supported by the pleadings or by the evidence.

We have previously stated the chain of events which clearly show that judgment on the verdict was signed on October 4, 1989 and that the trial amendment itself was filed of record one day later.

Appellant is now before this Court of Appeals facing a judgment based on jury verdict in the amount of $10,903.75 in favor of a party who was added to the case after both verdict and judgment, having never been served with citation by GEICO.

Our courts have long held that:

It is axiomatic that a judgment rendered against a defendant without citation or service upon him, or appearance by him, is a nullity.

*Gonzalez v. Gutierrez,* 694 S.W.2d 384 (Tex.App.—San Antonio 1985, no writ).

■ Our question is, "how could appellant have appeared and defended a claim made by a party who was not a party until after judgment had been entered?" This is violative of not only our United States Constitution, our Texas Constitution, but also a public policy that defendants ought not to be cast in personal judgment without notice. *Whitney v. L & L Realty Corp.,* 500 S.W.2d 94, 97 (Tex.1973). Absent valid service of process, the court did not have jurisdiction to render a money judgment against appellant. Without such jurisdiction an award of appellant's money to appellee was made without due process of law. *See also, Aetna Casualty and Surety Company v. Dobbs,* 416 S.W.2d 869, 871 (Tex.Civ.App.—Eastland 1967, no writ); *Perry v. Ponder,* 604 S.W.2d 306 (Tex.Civ. App.—Dallas 1980, no writ).

In an attack on a judgment, if a court having potential jurisdiction renders a judgment when its potential jurisdiction has not been activated, and the defect is apparent from the record, then the judgment is void. *Fulton v. Finch,* 162 Tex. 351, 346 S.W.2d 823 (1961). Further, in a direct attack on a judgment, as is the case on this appeal, the record must show strict compliance with jurisdictional requirements, and no presumptions or indulged in favor of such requirements. *McKanna v. Edgar,* 388 S.W.2d 927, 929 (Tex.1965).

*Reed v. Gum Keekpsake Diamond Center,* 657 S.W.2d 524, 525 (Tex.App.—Corpus Christi 1983, no writ).

The trial court did not have jurisdiction and could not have rendered a valid judgment in favor of GEICO and against appellant.

A fundamental precept of the American system of justice is that one party may not sue another party without meeting certain minimal procedural requirements. Every person or entity is entitled to substantive and procedural due process of law.

As an absolute minimum, the Texas and United States Constitutions require that a party be given full and complete notification of the charges against him, and that he be afforded a reasonable opportunity to respond. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Cunningham v. Parkdale Bank,* 660 S.W.2d 810 (Tex.1983); *Chow v. Dole,* 677 S.W.2d 220 (Tex.App.—Houston [1st Dist.] 1984, no writ); *State Bank of Omaha v. Means,* 746 S.W.2d 269 (Tex.App.—Texarkana 1988, writ denied); U.S. CONST.AMEND. XIV; TEX. CONST. art. 1 § 19.

■ Throughout the trial, Ms. Martin preserved error by objecting to the introduction of evidence of property damage. Over Ms. Martin's specific objections, the trial court permitted evidence to be presented to the jury. For example, Ms. Martin objected to the introduction of the sales invoice, sales receipt and State sales tax registration receipts for the Bronco on the two valid grounds that: (1) the records were hearsay and (2) that these records, along with the entire line of questioning, were improper matters for the jury to consider because no one had standing as a proper party to assert the property damage claims. The trial court, nevertheless, admitted the records.

Appellant made further handcuffed efforts to remove the property damages claim from the suit through a Bill of Exceptions which showed the following:

(1) Appellee Haynes settled his claim for property damage with his insurance company, GEICO;

(2) Haynes executed a sworn statement in Proof of Loss Form and a Power of Attorney for GEICO. These documents were authenticated by Haynes;

(3) Haynes remembered agreeing to release GEICO in exchange for GEICO paying approximately $13,000.00 to Ford Motor Credit Company;

(4) The Sworn Statement in Proof of Loss executed by Mr. Haynes provided:

... [T]he insured in consideration of the payment made under this policy

hereby assigns and subrogates to the said Company all rights and causes of action he may have because of this loss to the extent of payments made hereunder to him ...

Our trial court overruled appellant's proffer of testimony that Haynes had assigned all his rights to the cause of action on the Bronco, but not before the court noted, "If there is another party, it ought to be Ford Motor Company."

■ Appellees, for the first time on appeal, contend that Haynes had capacity to assert the property damage claim on behalf of GEICO. However, in appellee's own Motion for Leave to File Trial Amendment to add GEICO as a party plaintiff, appellees admit:

Plaintiff N.L. Haynes assigned to GEICO his right to recover for property damage in this action up to the sum of $13,262.00; under the jury's verdict, the property damage recovery will be approximately $10,903.75.

Appellee Haynes admits that he had assigned away his cause of action for property damages to GEICO up to the amount of the settlement. Appellees have admitted that GEICO was the proper party to recover the amount of property damages awarded by the jury. These admissions were clearly and positively made and not made alternatively nor have the pleadings containing these judicial admissions been amended or superseded.

■ Admissions in trial pleadings are regarded as judicial admissions in the case in which that pleading is filed, require no proof of the admitted fact and authorize the introduction of no evidence to the contrary. *Houston First American Savings v. Musick,* 650 S.W.2d 764 (Tex.1983); *McCaskill v. McCaskill,* 761 S.W.2d 470, 472 (Tex.App.—Corpus Christi 1988, writ denied).

Appellees cite the cases of *Jaskolski v. Jahn,* 410 S.W.2d 858, 859 (Tex.Civ.App.—Waco 1966, no writ); *Fort Worth & Denver Ry. Co. v. Ferguson,* 261 S.W.2d 874, 880 (Tex.Civ.App.—Fort Worth 1953, writ dism'd) for the proposition that an insured who has totally transferred his cause of action can bring suit in his own name.

First there is no evidence, nor any pleading, that the insurance carrier, GEICO, was pressing the suit in the name of N.L. Haynes. GEICO, the beneficial owner of part of the claim, did not institute suit in Haynes' name. Haynes brought suit in his own right. As the *Jaskolski* case cited by appellees clearly holds, the petition need not show on its face that it is brought for the benefit of another only "if in truth the real beneficial owner instituted the suit in that form." What we have is a belated attempt by GEICO to insert itself into this case as a party which even makes more irreconcilable the notion that Haynes was suing on behalf of GEICO.

We are of the opinion that *Ferguson, supra* also stands for the proposition that Haynes could not legally recover on behalf of GEICO. Nowhere in the record before us is there any evidence that Haynes had the authority and consent of GEICO to sue on behalf of GEICO. Such consent should have been produced promptly when the appellant objected to Haynes' standing.

Haynes expressly authorized GEICO "to prosecute any claim or suit, in its name of [sic] the name of the Insured, against any person or organization legally responsible for the loss." The Sworn Statement in Proof of Loss which contains this assignment does not contain any provision authorizing Haynes to bring suit on behalf of GEICO. To compound the flaw, we find no evidence at all in the record that GEICO even knew about the suit, let alone authorized or consented to the prosecution of the suit for property damages.

Appellees claim that appellant failed to comply with TEX.R.CIV.P. 93, 94 and 63 in obtaining leave to file an answer pleading Haynes' lack of capacity to assert the property damage claim. Appellant contends that this claim is patently false. We agree. The trial court expressly granted leave for appellant to file its verified First Amended Original Answer, and appellees acknowledged that leave was granted in their own pleadings.

We believe that the trial court clearly abused its discretion in granting leave for GEICO to enter the case as a party plaintiff. That abuse of discretion is coupled with the harm inflicted upon appellant by the error in permitting GEICO to recover as a plaintiff.

■■ Appellees tell us that the proper course of action for this Court of Appeals to take is the reversal of the judgment in favor of GEICO with remand to the trial court with instructions to enter judgment in favor of Haynes for property damages found by the jury. This suggestion is legally improper. Appellee did not bring a cross-point on appeal, a necessary prerequisite to the relief sought. *Agricultural Warehouse, Inc. v. Uvalle*, 759 S.W.2d 691, 696 (Tex.App.—Dallas 1988, writ denied).

We hold that the judgment in favor of GEICO to be a nullity.

REVERSED AND REMANDED.