**Wade H. NICHOLS, Individually and as Administrator of the Estate of John Earl Nichols, Deceased, Appellant,**

v.

**HOWARD TRUCKING CO., INC. and Charles R. Davis, Jr., Appellees.**

**No. 09–91–236 CV.**

Court of Appeals of Texas,
Beaumont.

Oct. 15, 1992.

Richard N. Evans, II, Evans & Evans, Beaumont, for appellant.

Louis H. Knabeschuh, Jr., D. Allan Jones, Orgain, Bell & Tucker, Beaumont, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

### OPINION

WALKER, Chief Justice.

We adopt appellant's Statement of the Case. This is a wrongful death and survivorship action by Appellant Wade H. Nichols, Individually and as Administrator of the Estate of John Earl Nichols, Deceased against Charles R. Davis, Jr., and his employer, Howard Trucking Co., Inc.

John Nichols died in a head-on collision on the Rainbow Bridge, Highway 87, in

---

Orange County, Texas, on the morning of December 24, 1988. Appellant brought his tort action against Charles Davis, Jr., the driver of the "eighteen wheeler" alleged to have crossed into Mr. Nichols' lane, and Mr. Davis' employer, Howard Trucking Company, Inc. Mr. Nichols was driving his El Camino truck in the collision.

Issues were submitted to the jury inquiring into the negligence of each of John Nichols and Charles Davis, Jr. The jury found that John Nichols was negligent, that this negligence proximately caused the accident and failed to find that Charles Davis, Jr., was negligent. Judgment was entered in favor of appellees. A Motion for New Trial was timely filed by appellant which contended that the trial court erred in admitting evidence of a urine drug screen on John Nichols. This was overruled. Appellant has perfected his appeal from the Final Judgment and is requesting this Court to reverse and remand for new trial.

The only eye witness to the collision to testify was Charles Davis. Mr. Davis testified that the accident occurred on the Rainbow Bridge, shortly after he had crested the bridge in the northbound lane. Davis further testified that after he, Davis, crested the bridge, Mr. Nichols' vehicle, which was traveling in the southbound lane, left its proper lane of travel and went into Mr. Davis' lane. Davis says that in an attempt to avoid the impending collision, he pulled his tractor/trailer truck as far to the right on the bridge as possible. According to Davis, the Nichols vehicle never returned to its proper lane of travel prior to impact and Davis' tractor/trailer truck never went into Mr. Nichols' southbound lane prior to impact. Davis testified that he did all that he could do to avoid the impact with Nichols.

The central issue in dispute in this juried proceeding was which vehicle crossed the center line causing the collision. On this issue, each side presented expert testimony from accident reconstruction experts. Plaintiff's expert, Robert Swint, testified that the impact occurred in Mr. Nichols' lane. Mr. Swint conceded that he could not state which lane the Nichols vehicle was in at 1–2 seconds before impact. Swint further conceded that he could not state that Davis was wrong when he testified that the Nichols vehicle came into his lane of traffic prior to impact.

Defendants' expert, William Nalle, testified that the impact occurred while the Nichols vehicle was in the Davis lane. Nalle based this conclusion on the length of the Nichols vehicle and the narrowness of the Rainbow Bridge. It was Nalle's opinion that for the accident to have occurred in Nichols' lane, Nichols' vehicle would have had to have been pushed against the railing, creating considerable damage to the railing and the rear of the Nichols vehicle. The physical evidence showed no substantial damage to the bridge railing or the rear of the Nichols vehicle to support this proposition. Nalle, therefore, concluded that the impact occurred as a result of the Nichols vehicle leaving its proper lane of travel. In Nalle's opinion, the accident could not have occurred as witness Swint testified, based upon the physical evidence.

In addition to the testimony of these engineering experts, defendants called the investigating DPS officer, Corporal Ronnie Fikes. Corporal Fikes had personally investigated thousands of accidents and was an instructor in various police academies on the subject of accident investigation. Fikes found physical evidence at the scene which in his opinion confirmed Mr. Davis' explanation of the accident. Fikes testified that in his opinion the Nichols vehicle was not completely in its lane of travel at the time of impact. Fikes opined that had the Nichols vehicle been in its lane of travel prior to impact, its rotation on impact would have caused it to hit the bridge railing in its lane. Fikes found no evidence that the Nichols vehicle hit the railing. In an effort to further show and explain to the jury why the Nichols vehicle crossed the center line causing the collision, defendants offered testimony indicating that Nichols had had no sleep for almost 24 hours prior to the collision, had consumed quantities of alcohol, and had ingested cannabinoids or marijuana "that evening or that day or several days before."

Defendants' exhibit number seven was admitted into evidence without objection. Exhibit seven was a chronology of Mr. Nichols' activities during the 24 hour period preceding this accident based upon the testimony of Mr. Nichols' girlfriend, Shannon Hoffpauir, and Mr. Nichols' friend, Daniel Hebert. A summarization of this evidence demonstrates that Nichols had worked, had been active, and had not had any sleep for a 24 hour period prior to the collision.

Defendants also offered evidence that Nichols had consumed alcoholic beverages in the evening hours preceding the accident. Dr. Oscar Griffin, who performed the autopsy on Mr. Nichols, testified that a blood test performed indicated that Mr. Nichols had 51.6 milligrams percent of alcohol in his system at the time of the autopsy, which is equivalent to 0.0516 percent alcohol concentration, slightly more than half of what is defined as intoxication in the State of Texas, .10 percent. *See* TEX. REV.CIV.STAT.ANN. art. 6701*l*–1(a)(2)(B) (Vernon Supp.1992). Corporal Fikes testified that alcohol acts as a depressant, slowing down an individual's reaction time. Fikes also testified that fatigue has the same depressive effect. Defendants' expert toxicologist, Floyd McDonald, gave testimony regarding the adverse effects alcohol has on an individual's ability to operate an automobile.

Now, to the crux of appellant's complaint in this appeal. Defendants, in their efforts to explain why the Nichols vehicle crossed the center line creating the collision, offered into evidence a urinalysis test performed by Dr. Oscar Griffin as part of the autopsy of Mr. Nichols. That urinalysis was positive for the presence of cannabinoids or marijuana. There was considerable testimony as to the effect that marijuana has on an individual. Plaintiff objected to the admission into evidence of the testimony that Nichols tested positive for the presence of cannabinoids. Plaintiff's objection was made pursuant to and under TEX. R.CIV.EVID. 403. The trial court overruled

plaintiff's objections and admitted the urinalysis evidence.

Appellant brings three points of error which contend that the trial court erred in admitting evidence of a urinalysis result; in overruling appellant's motion for new trial based on the contention that it abused its discretion when it admitted the urinalysis result; and that the trial court abused its discretion in admitting testimony that the decedent had consumed or ingested marijuana in that a proper predicate had not been laid by appellee to make the evidence material and relevant to the factual issues in the case.

■ We view appellant's three points of error together in that each is a complaint of trial court error as to the admission into evidence the urinalysis result which showed decedent positive for cannabinoids or marijuana.

We previously stated that appellant's objection to the admission of the urinalysis testimony relating to such test, was based on TEX.R.CIV.EVID. 403. We believe that Rule 403 presumes relevance but is a contest to such evidence because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. We believe that appellant's reliance on *Compton v. Jay*, 389 S.W.2d 639 (Tex.1965), and *R.T. Herrin Petroleum Transport Co. v. Proctor*, 161 Tex. 222, 338 S.W.2d 422 (1960), is misplaced. In reviewing those cases it appears to this Court that the evidence in *Compton* and *Proctor* was offered as character or habit evidence. *See* TEX.R.CIV. EVID. 404 and 406. In our case the evidence was offered on the intoxication issue and as an explanation for why Mr. Nichols' vehicle crossed the center line causing the collision. This Court has approved the admissibility of this type evidence in circumstances similar to those before us on appeal. *Dorman v. Langlinais*, 592 S.W.2d 650 (Tex.Civ.App.—Beaumont 1979, no writ).

In *Dorman* this Court was presented the question of whether the trial court erred in

excluding evidence from a witness that he smelled alcohol on the breath of the defendant after the collision. This Court concluded "that evidence of the use of intoxicants is inadmissible as immaterial unless there is further evidence of negligent and improper conduct of the part of the user." *Id* at 652. We recently reaffirmed *Dorman* in *Trans–State Pavers, Inc. v. Haynes*, 808 S.W.2d 727 (Tex.App.—Beaumont 1991, writ denied). In *Haynes* we held that the trial court's exclusion of testimony concerning plaintiff's use of intoxicants was reversible error when there was other evidence of negligent conduct.

In our case the evidence clearly shows acts of negligence and improper conduct on the part of Mr. Nichols. Mr. Davis was certain that the accident happened in his lane of travel. William Nalle and Corporal Ronnie Fikes were unequivocal in their opinion that the accident occurred in Mr. Davis' lane of travel. Thus, we have testimony from three witnesses that the decedent John Earl Nichols crossed the center line of the highway and was in the wrong lane of travel at the time of the accident. We believe that this testimony constitutes specific evidence of negligence and improper conduct on the part of Mr. Nichols. We further believe that in view of *Dorman* and *Haynes*, the introduction of the urinalysis test was proper as providing some explanation for the negligence and improper conduct. We would be remiss should we fail to mention *Ford Motor Co. v. Whitt*, 81 S.W.2d 1032 (Tex.Civ.App.—Amarillo 1935, writ ref'd). The Amarillo court found that the trial court had incorrectly excluded evidence of the use of intoxicants because there was evidence that the vehicle in that case "traveled [sic] from first one side of the road to the other." *Id* at 1036. The court held the evidence of the use of intoxicants was admissible to explain the negligent behavior of the driver. We believe that a positive urinalysis, being a scientific test, is more direct and probative than the mere evidence of intoxication presented in *Whitt*. In *Whitt* trial court error occurred in the excluding of evidence from a witness

that he smelled alcohol on the defendant's breath after the accident. *Id.*

■ Appellant tells us that the trial court abused its discretion in allowing the evidence regarding the urinalysis to be presented to the jury contending that the probative value of such evidence is outweighed by the danger of unfair prejudice. We agree that the admission of the urinalysis was prejudicial to plaintiff's case, however, we do not believe that same constituted an unfair prejudice. Relevant evidence is almost always prejudicial to the party against whom same is offered. In order to find error through abuse of discretion, we must determine that the admission of such prejudicial evidence was calculated to cause and probably did cause the rendition of an improper judgment. Normally, reversible error does not occur in connection with evidentiary rulings on questions of evidence unless the whole case turns on the particular evidence admitted or excluded. *Atlantic Mutual Insurance Co. v. Middleman*, 661 S.W.2d 182 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Recalling the evidence, Corporal Fikes testified that Nichols crossed the center line causing the collision. Charles Davis testified that Mr. Nichols crossed the center line causing the collision. The jury was free to resolve the disputed issues based upon this evidence alone. The jury was also free to resolve the issues against plaintiff based upon the testimony of defendants' expert witness, Nalle. Other evidence showed blood alcohol content and further that Mr. Nichols had not slept in nearly 24 hours. Plaintiff cannot demonstrate that the entire case turned on the admission of the positive drug screen result. Appellant has shown no abuse of discretion by the trial court in admitting the questioned evidence.

Appellant does not point out with any specificity or authority as to how the trial court abused its discretion in failing to require a proper predicate of the admission of the urinalysis test. We overrule appellant's point of error three without discussion. Points of error one and two are overruled for reasons here and above stat-

ed and the judgment of the trial court is in all things affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the affirmance. I differ with the majority on the admissibility of the results of the urinalysis test. I believe the cases of *Dorman v. Langlinais*, 592 S.W.2d 650 (Tex.Civ.App.—Beaumont 1979, no writ), *Trans–State Pavers, Inc., v. Haynes*, 808 S.W.2d 727 (Tex.App.—Beaumont 1991, writ denied) and *Ford Motor Co. v. Whitt*, 81 S.W.2d 1032 (Tex.Civ. App.—Amarillo 1935, writ ref'd) all stand for the proposition that while evidence of the use of intoxicants is admissible if there is other evidence of negligent conduct, it is implied that the use of the intoxicants must be at least circumstantially connected with the negligent conduct. I base this on the fact that each of the cited cases involved the smell of alcohol on the breath, indicative of recent consumption of an intoxicant, thus probative and relevant to the issue of impairment at the time of the occurrence. This case is different. The pathologist testified the test performed was not a quantitative one. The test merely showed "that the patient had smoked a marijuana cigarette at some time—one or more—in the past. Whether it was done that evening or that day or several days before, I could not say. His urine showed up positive for cannabinoids." The toxicologist, in response to the question: "... [C]an you tell from those results whether marihuana [sic] was used the evening in question, or some time previously?", testified: "No, you can't tell. Marihuana [sic] will stay in the urine for a good while after you use it." The toxicologist further testified that if marijuana had been present and *active* in the system it

would also have been a reason for the vehicle crossing the road. (emphasis added) On cross-examination, the toxicologist admitted: "... it is still pure speculation as to whether this man had active marihuana [sic] in his system at the time of his death, is it not?" Because of the speculative nature of the testimony, it was not relevant.[1]

Our society is becoming more educated about the detrimental effects of substance abuse. It is not necessarily a bad thing that society is becoming less tolerant of the use of illegal substances and the immoderate use of legal ones. However, the courts must acknowledge this growing awareness in determining the prejudicial effect of admitting evidence. TEX.R.CIV.EVID. 403 requires a "balancing test" of the probative value versus the danger of unfair prejudice. In making this judgment, trial courts should look at the other evidence. Here there was direct evidence of the deceased being in the wrong lane. There was accident reconstruction testimony that placed the deceased in the wrong lane. There was evidence of lack of sleep and alcohol ingestion and that either or both could have been contributing factors. This lessened the probative value, or said another way, the marijuana ingestion was somewhat cumulative. On the other hand, use of an illegal substance carries great prejudicial effect.[2] Even if relevant, the prejudicial effect outweighed the probative value and the evidence should have been excluded.

I concur, rather than dissent, because I am not convinced that the erroneous admission was calculated to and probably did cause the rendition of an improper judgment. Because of the other evidence, the whole case did not turn on the particular

---

1. Appellant's counsel made very general objections without specific reference to the Texas Rules of Civil Evidence. His objection to the pathologist's deposition testimony was: "The test results of the urine sample do not show any evidence of intoxication or influence of anything. It's merely asserted by the defendant to prejudice the jury. There's no evidence which preponderates on this point. It's merely prejudicial." The objection to the toxicologist's testimony was: "... it is prejudicial and merely *entered to inflame the minds of the jury. It is*

not probative on any point in the case." However, appellees do not argue the points were not properly preserved.

2. We were only furnished a partial statement of facts, but apparently there was some agreement not to mention the drug test during the voir dire of the jury. Consequently, whether the use of illegal substances was particularly offensive to the jury was unknown to the parties or the court. This was certainly a matter that should have been fully explored prior to jury selection.

evidence admitted.[3] Consequently, I concur in the affirmance.

---

**3.** This is another case where an able litigator, in zealously (and properly) representing a client, feels that every arrow in the quiver must be used, even if the prey has been mortally wounded.