The **ESTATE OF Lola MILO, Yannequa Graham, James Milo, Individually and as Parent and Legal Guardian of the Minor, Jamie Milo, Katherine Graham, as Next of Friend of Sholanda January, and Katherine Graham, Individually, Appellants,**

v.

**PARK PLACE HOSPITAL, Dorris Jones, and George Zuzukin, M.D., Appellees.**

No. 09–94–008 CV.

Court of Appeals of Texas, Beaumont.

Submitted May 3, 1994.

Decided Sept. 29, 1994.

Rehearing Overruled Oct. 21, 1994.

K. Omari Fullerton, Clark & Fullerton, Houston, for appellants.

Curry L. Cooksey, Orgain, Bell & Tucker, Beaumont, Joel Randal Sprott, Sally Takacs Miller, Munisteri, Sprott, LeFevre & Rigby, Houston, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Appeal from a summary judgment granted in favor of the appellees herein, being George Zuzukin, Dorris Jones, and Park Place Hospital. The cause of action was generally alleged as a medical malpractice case brought by the appellants. The allegations were that the decedent, Lola Milo, had obtained the age of 32 years at the time of her death. She was a patient, it was alleged, at Park Place Hospital when certain medical negligences on the part of the appellees caused her untimely demise. The decedent, Milo, went to the Park Place Hospital for treatment of a hiatal hernia operation. Her estate alleged that Milo was prematurely weaned by the appellee, George Zuzukin, M.D., and that this premature weaning caused the death of Milo. Milo's estate cites a certified copy of her death certificate stating that Lola Milo died of and from ischemic brain damage. Another appellee, Dorris Jones, was the nurse assigned to the decedent, Milo. The allegations were that Ms. Jones rendered substandard medical care as a nurse to the decedent.

The appellants brought their cause of action pursuant to TEX.CIV.PRAC. & REM.CODE (Texas Wrongful Death Act) § 71.004, originally against Park Place Hospital, Drs. George Zuzukin, Cecil Walkes, Joseph Badlissi, Hussam Fadhli, and Dorris Jones, a registered nurse, alleging both negligence and gross negligence. Later, Drs. Walkes, Badlissi, and Dr. Fadhli were subsequently dismissed from this lawsuit. After a hearing the trial court granted summary judgment in favor of Park Place Hospital, Dorris Jones, and George Zuzukin based on lack of causation. The appellants perfected a proper and timely appeal.

### The Cross Point

An interesting and dispositive cross point is brought forward, argued, and briefed in the brief of certain appellees. These appellees are Park Place Hospital and Dorris Jones. The other appellee makes no such complaint or cross point. The cross point maintains that the appellants' brief is deficient in that appellants' brief fails to identify places in the record that support their claims, contentions, and arguments. We have carefully read and reread the appellants' brief herein. The brief is concise, consisting of about seven or eight pages of a preliminary statement and four points of error.

However, without criticism of anyone and with due deference to all, we do not find in the appellants' brief any reference to the transcript or the record before us. The record is somewhat lengthy.

An appellant or appellants (as situated here) are generally required to identify the places and the pages in the record and in the transcript that support the appellants' complaints, briefs, and arguments. *See and compare Keene Corporation v. Gardner,* 837 S.W.2d 224 (Tex.App.—Dallas 1992, writ denied); *Barham v. Turner Const. Co. of Texas,* 803 S.W.2d 731 (Tex.App.—Dallas 1990, writ denied).

Very importantly, TEX.R.APP.P. 89 provides in relevant part as follows:

> ... and nothing herein shall be construed to limit or impair the power of the court of

appeals to otherwise tax the cost for good cause.

The appellees, Park Place Hospital and Dorris Jones, in their brief, misquote a rule of Appellate Procedure that they designate as 50(f)(1). Apparently they meant to refer to TEX.R.APP.P. 74(f) reading as follows:

(f) Argument. A brief of the argument may present separately or grouped the points relied upon for reversal. The argument shall include: (1) a fair, condensed statement of the facts pertinent to such points, *with reference to the pages in the record where the same may be found;* and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. (emphasis added)

We agree that our appellate court is not required to search through the entire record to determine if the appellants' contentions and arguments are valid and if they are based upon and actually found in the summary judgment record on appeal before us. *See Kropp v. Prather,* 526 S.W.2d 283 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.).

As noted above, we do not find any reference in appellants' brief to any pages in the record as required by Rule 74(f)(1).

■ This cross point may be and probably is dispositive of the appeal on procedural matters. However, out of an abundance of precaution, we have attempted to carefully examine the index to the various transcripts and dig through the transcripts. We have located a response to the appellees' motion for summary judgment filed by the appellants. The appellants argue "flat footedly" in their brief that there is a certain, crucial, and vital death certificate attached to their responses. We cannot find the same in their first response, but significantly in their first response there is a rather detailed and specific, factual affidavit made and sworn to by a medical doctor, one Boniface Gbalazeh, M.D.

Dr. Gbalazeh's affidavit swore that he was a physician and duly licensed to practice since 1976. His practice was concentrated in the area of emergency medicine and family practice medicine in Harris County and Victoria County, but that he was familiar with the standard of care of practicing physicians in Jefferson County, and similar counties in Texas at all times material to this litigation. This doctor swore that the care that was given to the deceased, Lola Milo, was not within the standard of care and that the standards of care were breached in Milo's case; Gbalazeh swore that the care was below standard. This doctor swore that he had reviewed the medical records on Milo generated from June through September of 1989, and that he had discovered multiple, substandard medical practices which contributed to the death of Mrs. Milo.

Whether we agree or not or whether we want to or not, we must accept this statement and affidavit as true and we must accept as true the non-movants' summary judgment proof. We think this affidavit raises the issue of causation.

But this doctor gave more in his sworn affidavit. It contained acceptable summary judgment evidence. This doctor swore that foreseeable, post-operative complications were ignored until an advance stage of septic shock and intestinal infarction resulted. After this result, the chances of survival of Mrs. Milo were significantly decreased. This doctor swore to other numerous facts that we must take as true, which in our opinion under our unique summary judgment practice in Texas, defeats the appellees' motion for summary judgment on the merits of the summary judgment proceedings.

For example, this physician found, among other things, that no objective guidelines for anticipating and managing a respiratory problem that was consequent to her second surgery appear in or on the record and as a result thereof and as a consequence thereof, Milo was weaned off the respirator prematurely resulting in anoxic brain damage. Also the cardiac arrest was, in the opinion of this doctor, caused by prematurely weaning Mrs. Milo off the respirator and resulted also from other substandard medical care. This physician unequivocally stated and swore that it was obvious that the medical management personnel at Park Place Hospital (by their own admissions) did not know what was going on and did not know what to do to find

out what was going on. This personnel waited until Mrs. Milo had sustained irreversible cardio pulmonary and central nervous system damage before transferring her to St. Lukes Hospital where she could have been probably, successfully helped if transferred much earlier.

*This doctor concluded his affidavit by saying that there were many other deficiencies on the record concerning the management of Mrs. Milo at Park Place Hospital which showed that Mrs. Milo received substandard care which within reasonable medical probability resulted in her death.* There appears to be some other evidence in the record to the effect that when Mrs. Milo was taken off of the respirator or the mechanical ventilator that shortly thereafter Mrs. Milo told some personnel that she could not breathe, but that thereafter some personnel told Mrs. Milo that she could breathe and that Mrs. Milo should not worry.

Additionally, we must consider another lengthy affidavit made by one Silvia Tiller, a LVN. Tiller's affidavit is lengthy and in detail. It raises numerous genuine issues of material facts regarding the alleged substandard care. Tiller basically swore that the nursing care afforded to Mrs. Milo was not up to standard and that Mrs. Milo should have been very closely watched by the nurse in charge and that the nurse in charge failed to watch Mrs. Milo closely. This LVN affiant stated that according to the nurse's notes and notations that the patient Milo was placed back in the bed at a certain time and soon thereafter experienced difficulty breathing. The attendant nurse noted an astolic line on the monitor. The standard of care then would call for a nurse similarly situated to immediately remove the T tube and to "bag" the patient at the first notation of difficulty in breathing.

Then, the standard of care would require a nurse to immediately initiate the emergency system as it was clear that the doctor needed to be notified at once and further additional assistance was needed immediately. Should the patient go into arrest, then the nurse must necessarily initiate cardio pulmonary resuscitation. The basic thrust and gravamen of Tiller's affidavit was that the nursing

care breached and fell below the medical standard of care as it applies to nurses that possessed the degree of learned capability as the nurse possessed in this case. The last paragraph of Tiller's affidavit reads thus: "For the foregoing and many other deficiencies on record in the management of Mrs. Milo's nursing care at Park Place Hospital, I believe she received substandard care which within reasonable medical probability caused her death." We must take this affidavit as true under the standards and rules of summary judgment practices.

■ A comprehensive and inclusive statement of the standards of review as applicable here is set out clearly in *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex. 1985). We quote from *Nixon*:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

Notice that any doubts are resolved in favor of the non-movant. *Id.*, at 548–549; *Turboff v. Gertner, Aron & Ledet, Inv.*, 763 S.W.2d 827, 829 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Moreover, the usual presumption that the judgment is correct does not apply. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965).

Justice Doggett speaking and writing for an unanimous Supreme Court of Texas in *Acker v. Texas Water Com'n*, 790 S.W.2d 299, 302 (Tex.1990), wrote and held as follows:

In the review of a summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Evidence favorable to the

non-movant will be taken as true when deciding whether a material fact issue exists. All reasonable inferences must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Having located the death certificate in the record, it is concluded that it does raise an issue of causation, when taken with and coupled with the other summary judgment proof. The immediate cause of death and the final disease was listed as ischemic brain damage due to respiratory and cardiac arrest due to abdominal sepsis and abdominal abscess. The death certificate was signed by Frederic Hochman, M.D., of Houston, Texas.

### The Venue Question

■ Concerning the transferring of venue of this case from Harris County to Jefferson County, the record fails to reveal error in such transfer. The appellants have failed to bring forward a sufficient and adequate record for review on this point. A number of the trial court's records are missing. The burden is certainly upon the appellant to present a sufficient record to show reversible error. Appellants have not done so. We simply do not have a complete nor do we have an adequate record before us on this point. There was no error in the transferring of this case to Jefferson County.

*It should be stressed that the affidavits referred to above tendered by the plaintiffs were based upon reasonable medical probability.*

### Dr. Zuzukin's Position on Appeal

■ Dr. George Zuzukin's position on appeal is that the plaintiffs below claimed and alleged that Dr. Zuzukin's medical negligence caused the death of Mrs. Lola Milo. Dr. Zuzukin denies this allegation. Dr. Zuzukin's motion for summary judgment was based on the fact that his summary judgment motion negated the issue of proximate cause. Dr. Zuzukin's position is that according to the pleadings and the evidence, Dr. Zuzukin's involvement with this patient was limited to weaning her from a respirator after surgery. Dr. Zuzukin's contention is that at the time

he began to treat Mrs. Milo that Mrs. Milo had suffered certain post-operative and multi-system organ failures and had less than a 40 percent chance of survival. This doctor's brief concedes that the motion for summary judgment was granted to him on the issue of proximate cause. Zuzukin's first point of error is that our appellate court has no jurisdiction to decide this case because the appeal bond was not timely filed. We have carefully examined the transcript, including page 304–A, and we note that a proper certificate of cash in lieu of bond was made, filed, and acknowledged by the district clerk on December 13, 1993. The critical order was signed September 20, 1993. Therefore, the cash certificate in lieu of bond was timely filed. We overrule jurisdictional point one.

Zuzukin's next point of error is that the appellants failed to submit summary judgment evidence to the effect that Dr. Zuzukin's alleged negligent acts were not based upon a reasonable medical probability and, therefore, showed no proximate cause for the death of Milo. As discussed and set out above in the two affidavits, we are required to overrule this point of error.

The doctor's next point of error is that the appellants have waived any complaint of insufficient notice of the date of the hearing of the motion for summary judgment. Under our disposition of the case, that point of error is now moot and is not dispositive. It is a non-point.

In a reply point, Dr. Zuzukin takes the position that the granting of the summary judgment was based upon a total lack of evidence in the element of causation. As noted above, we are required under accepted rules to overrule this point of error in view of the non-movants' proof.

The last point of error of Dr. Zuzukin reads:

Appellants have wholly failed to establish that the trial court erred in granting the motion to transfer venue.

We sustain this final point and conclude that the transfer to Jefferson County was proper. Having found error, we reverse the judgment and remand the cause. Having found reversible error and in the interests of justice and

in the exercise of our broad discretion in the interests of justice, we, on this additional, separate and independent ground, reverse the judgment and remand the cause for a full trial on the merits.

Costs of appeal are taxed against appellants.

REVERSED AND REMANDED.