COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-377-CV
 
  
LOIS BEDFORD, INDIVIDUALLY                                               APPELLANT
AND ON BEHALF OF THE ESTATE
OF EDWIN BEDFORD, DECEASED
  
V.
  
RITA ELAINE MOORE, TIM ALDRICH                                         APPELLEES
D/B/A T-C TRUCKING COMPANY,
AND SCOTTY HAMRICK D/B/A
WESTERN CONTRACTORS
 
  
------------
 
FROM THE 153RD DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION *
 
------------
I. Introduction
        This 
is an appeal from a judgment in a car-truck collision case following a jury 
verdict in favor of Rita Elaine Moore (“Moore”), Tim Aldrich d/b/a T-C 
Trucking Company (“Aldrich” and “T-C”), and Scotty Hamrick d/b/a Western 
Contractors (“Hamrick” and “Western”), wherein in two issues Lois 
Bedford, individually and on behalf of the estate of Edwin Bedford 
(“Bedford”) asserts that the trial court committed error in the charge of 
the court by failing to submit a negligence question to the jury concerning 
Western and Aldrich and by excluding evidence that Moore, the driver of the 
Western vehicle, tested positive for methamphetamines in her post-accident drug 
screen. We will affirm.
II. Factual Background
        This 
is the case of the absent entrustment issue. Shortly after noon on September 9, 
1999, Edwin Bedford (“Mr. Bedford”) was involved in a motor vehicle accident 
with Moore. Mr. Bedford had pulled into a convenience store at the intersection 
of FM 1187 and Stephenson-Levy Road in Tarrant County, Texas. Upon emerging from 
the store parking lot, he crossed, or was crossing, the eastbound lane of FM 
1187 to head westward when he was struck by an eastbound Volvo gravel truck 
driven by Moore for Western. Although she applied her brakes and attempted to 
avoid the collision, Moore was unable to avoid striking the vehicle. The 
collision caused Mr. Bedford’s vehicle to be pushed off the road and up an 
embankment before the Volvo gravel truck came to rest on top of Mr. Bedford’s 
vehicle. Mr. Bedford died as a result of the accident. Following the accident, 
Moore tested positive in a drug screen for methamphetamines.
        The 
truck Moore was driving was owned by Aldrich, an employee of Western. It was 
leased to Western, which was owned by Hamrick, and was operated under 
Western’s United States Department of Transportation (“DOT”) permit. Prior 
to this incident, Moore had been involved in two other motor vehicle accidents 
and had received ten or more speeding citations in her eight years as a 
commercial driver. Hamrick had not taken any steps to check Moore’s driving 
record before she was employed. The evening before the accident, Moore had been 
up all night waiting in an emergency room at a local hospital as a result of a 
head injury. When she arrived for work on the day of the accident, she appeared 
with a bandaged head and had received nine stitches in the emergency room but 
was allowed to drive the truck that was involved in the accident.
        After 
the accident, this lawsuit ensued between Bedford and those allegedly 
responsible for the accident, resulting in a take-nothing judgment following a 
jury trial. Bedford appeals that judgment.
III. Charge of the Court
        Bedford 
phrases her first issue as “Whether the trial court erred in not submitting a 
negligence determination to the jury of Western Contractors and Aldrich?”
        A. Standard of Review
        The 
trial court’s submission of instructions and jury questions is reviewed under 
an abuse of discretion standard. Toles v. Toles, 45 S.W.3d 252, 263 (Tex. 
App.—Dallas 2001, pet. denied). The trial court has broad discretion in 
submitting jury questions so long as the questions submitted fairly place the 
disputed issue before the jury. This broad discretion is subject only to the 
limitation that the controlling issues of fact must be submitted to the jury. Rosell 
v. Cent. W. Motor Stages, Inc., 89 S.W.3d 643, 653 (Tex. App.—Dallas 2002, 
pet. denied).
        In 
order to have a question submitted to the jury, there must be a proper legal 
theory forming a basis of recovery, and there must be sufficient evidence 
adduced to warrant its submission. If the reviewing/appellate court determines 
that error occurred, it must determine from the pleadings of the parties, the 
evidence presented at the trial, and the charge in its entirety whether such 
errors are reversible. Island Recreational Dev. Corp. v. Republic of Tex. Sav. 
Ass’n, 710 S.W.2d 551, 555 (Tex. 1986). Charge error is harmful only if it 
probably caused an improper judgment. Tex. 
R. App. P. 44.1(a)(1); Rosell, 89 S.W.3d at 653.
        B. The Negligence Question
        In 
its charge, the trial court posed to the jury the following liability questions 
(instructions omitted):
   
Question 1:
Did 
the negligence, if any, of those named below proximately cause the occurrence in 
question?
Answer 
Yes or No for each of the following:
Rita 
Elaine Moore _________
Edwin 
Bedford _________
 
 
  
Question 
2:
What 
percentage of the negligence that caused the occurrence do you find to be 
attributable to each of those listed below and found by you, in your answer to 
Question 1, to have been negligent?
Rita 
Elaine Moore _________
Edwin 
Bedford _________
                Total                  100%
  
 
No 
question was presented to the jury concerning the negligence of Western or 
Aldrich compared to the negligence of Moore and Bedford. The jury answered 
question number one affirmatively for both Moore and Bedford. In response to 
question number two, the jury allotted forty percent of the negligence to Moore 
and sixty percent to Bedford, thereby precluding any recovery on Bedford’s 
part due to the fifty-percent bar rule. Tex. 
Civ. Prac. & Rem. Code Ann. § 33.001 (Vernon 1997).[1]  
The court subsequently signed a take-nothing judgment on September 24, 
2003.  This appeal followed.
        C. Negligent Hiring and Entrustment
        In 
the pleadings on file, Bedford asserted various direct negligence causes of 
action against Aldrich and Western, generally related to negligent hiring, 
training, retaining, supervising, and entrusting Moore with the vehicle on the 
date in question, along with numerous alleged violations of the Federal Motor 
Carrier Safety Regulations.[2]  On appeal, 
Bedford points the court to evidence presented at the trial of negligent hiring 
and entrustment by Aldrich and Western.  This evidence is not contested.
        It 
is appellees’ position that it was unnecessary to submit a comparative 
negligence issue as to any party other than Moore and Bedford because the 
liability of any other defending party (the “other parties”) would be 
derivative of Moore’s liability.  In other words, the “other parties” 
actions, standing alone, could not have caused this accident without the actions 
of Moore at the time of the accident. That is, they could be exposed to 
liability only if Moore’s negligence proximately caused the accident. 
Appellees cite Rosell, 89 S.W.3d at 643, Loom Craft Carpet Mills, Inc. 
v. Gorrell, 823 S.W.2d 431 (Tex. App.—Texarkana 1992, no writ), and Rodgers 
v. McFarland, 402 S.W.2d 208 (Tex. Civ. App.—El Paso 1966, writ ref’d 
n.r.e.), to support their position that the “other parties’” submission 
was unnecessary. In Loom Craft, the court held as follows:
    

Negligent entrustment liability is derivative in nature.  While entrusting 
is a separate act of negligence, and in that sense not imputed, it is still 
derivative in that one may be extremely negligent in entrusting and yet have no 
liability until the driver causes an injury.  If the owner is negligent, 
his liability for the acts of the driver is established, and the degree of 
negligence of the owner would be of no consequence.  When the driver’s 
wrong is established, then by negligent entrustment, liability for such wrong is 
passed on to the owner.  We believe the better rule is to apportion 
fault only among those directly involved in the accident, and to hold the 
entrustor liable for the percentage of fault apportioned to the driver.
  
823 
S.W.2d at 432 (emphasis supplied) (citations omitted).  In Rodgers 
(a case involving the old “guest” statute, Article 6701b of the Texas Civil 
Statutes[3]), the court observed that
   
[t]he doctrine of negligent entrustment is that the owner of a vehicle who 
knowingly turns it over to an incompetent driver is liable for wrong committed 
by such driver.  It differs from master-servant or agency relationships, 
for it is founded in tort—the negligence of the owner in turning the 
incompetent loose on the public.  If, in fact, the owner is negligent, his 
liability for the acts of the driver is established, and the degree of 
negligence of the owner would be of no consequence . . . .  Obviously, an 
owner who is negligent in entrusting his vehicle is not liable for such 
negligence until some wrong is committed by the one to whom it is entrusted . . 
. .  The driver’s wrong, in the form of legal liability to the plaintiff, 
first must first be established, then by negligent entrustment liability for 
such wrong is passed on to the owner.  The proximate cause of the accident 
or the occurrence is the negligence of the driver and not that of the owner.
 
 
402 
S.W.2d at 210.  The Rodgers opinion further cites McIntire v. 
Sellers, 311 S.W.2d 886 (Tex. Civ. App.—Austin 1958, writ ref’d n.r.e.), 
for the proposition that “we do not believe it was necessary to submit an 
issue of proximate cause insofar as concerned the owner’s negligence in 
entrusting the automobile to an unlicensed driver.” Id. at 892-93 
(emphasis supplied).  We would observe that the Rodgers case was 
written before the adoption of the Proportionate Responsibility Act, as it 
appears today in the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 
33.001; see also Rosell, 89 S.W.3d at 656 (“[B]ecause [the employer] 
would be liable for its employees’ negligence [under negligent entrustment], 
there was no necessity for including [the employer] in the ordinary negligence 
liability question.”)
        D. Respondeat Superior
        Bedford 
also assigned vicarious liability to Aldrich and Western as truck owner and 
employer of Moore under the theory of respondeat superior.  As to vicarious 
liability, such as the theory of respondeat superior for an employee/employer, 
there need not be any allegation of negligence on the employer’s part because 
an employer would be responsible for the employees’ actions even if the 
employer were free from fault.  Baptist Mem’l Hosp. Sys. v. Sampson, 
969 S.W.2d 945, 947 (Tex. 1998).  Therefore, there is no need to submit the 
employer’s or owner’s separate negligence under that theory.  Rosell, 
89 S.W.3d at 653.
        E. 
Which Theory is Most Applicable?
        It 
is appellees’ position that negligent hiring and entrustment are akin to the 
respondeat superior doctrine because both are derivative in nature.  That 
is, they are dependent on a finding of negligence against Moore before any 
liability can be attributed to them.  Further, appellees argue that the 
previously recited case law regarding negligent entrustment does not support 
submitting the employer or owner in the negligence liability/percentage 
questions, per Loom Craft, Rodgers, MacIntire, and Rosell.
        Bedford 
responds to these arguments by asserting that chapter 33 of the Texas Civil 
Practice and Remedies Code specifically provides that a jury shall determine the 
negligence of “each defendant.”  Tex. 
Civ. Prac. & Rem. Code Ann. § 33.003(2).  Section 33.003, 
entitled “Determination of Percentage of Responsibility” provides that
   
[t]he trier of fact, as to each cause of action asserted, shall determine the 
percentage of responsibility, stated in whole numbers, for the following 
persons:
  
(1) 
. . .
(2) 
each defendant . . . .
 
 
Id.  
Section 33.011, the definitions section, defines “defendant” as “any 
person from whom, at the time of the submission of the case to the trier of 
fact, a claimant seeks recovery of damages.”  Tex. Civ. Prac. & Rem. Code Ann. § 
33.011 (Vernon Supp. 2004-05).  Bedford therefore asserts that because 
damages were sought at the time of trial from the “other parties,” e.g., 
Aldrich and Western, it was error not to include them in Question 1 and Question 
2 of the charge of the court.  We do not agree with the literal 
interpretation urged by Bedford. As the Dallas Court of Appeals has observed,
   
[W]e observe that, while the statute [section 33.003] on its face requires all 
defendants to be included in the apportionment question, it would not be proper 
for an employer to be included along with the driver if its only responsibility 
was that of respondeat superior.
 
 
Rosell, 
89 S.W.3d at 656-57.
        This 
is obvious because an employer may have committed no negligent acts to submit to 
the jury and still be held accountable under respondeat superior.  Also, 
Professors Underwood and Morrison have postulated that the legislature, in 
enacting the original and present versions of section 33.003, did not consider 
derivative or vicarious liability cases.  William D. Underwood & 
Michael D. Morrison, Apportioning Responsibility in Cases Involving Claims of 
Vicarious Derivative, or Statutory Liability for Harm Directly Caused by the 
Conduct of Another, 55 Baylor L. Rev. 
617, 647-48 2003).  They note that nothing in the legislative history 
suggests that the act intended to overturn the long-established rule that the 
responsibility of persons who are derivatively liable should not be submitted:
   
Before construing the revised provisions in Chapter 33 to overturn established 
law — law that is supported by compelling policy justifications — it would 
not be unreasonable to insist on more direct indication that this is what the 
legislature intended to accomplish.
 
 
Id. 
at 648.
        Bedford 
further responds by pointing to the recent case, F.F.P. Operating Partners, 
L.P. v. Duenez, 47 Tex. Sup. Ct. J. 1068, 2004 WL 1966008 (Tex. Sept. 3, 
2004), as requiring the submission of the “other parties’” 
negligence to the jury.  We first note that this opinion is a five-four 
decision with Justice O’Neill writing for the majority and Justice Owen 
writing for the dissent, with a motion for rehearing pending at this time.  
Before examining this case, we must first decide specifically, what issue is 
before this court?  Succinctly put, it is, should negligent hiring and 
entrustment by an employer be submitted comparatively to the jury along with the 
employee’s negligence?  There appears to be three types of cases under 
consideration.  First is a purely vicarious liability situation, such as an 
employer/employee relationship involving respondeat superior wherein the 
employer is liable for the actions of the employee regardless of any allegation 
of fault on the part of the employer.  Under this situation, the 
employer’s negligence is not submitted because the employer and employee are 
considered to be one and the same.  Duenez, 2004 WL 196608, at 
*4.  Second, at the other end of the spectrum are concurrent tortfeasers 
whose independent, distinct acts both proximately cause damage to the plaintiff, 
such as two automobiles running a red light and colliding with a third 
vehicle.  Obviously in such a situation, both drivers who ran the red light 
would be submitted to the jury in the liability and percentage of negligence 
questions.  Third, betwixt these situations are the negligent hiring and 
entrustment situations in which there are distinct acts of negligence, like the 
concurrent tortfeasor situation, and yet the distinct negligent act of hiring or 
entrusting, standing alone, is wholly dependent for causation upon the actions 
of the person who directly caused the accident, as in the respondeat superior 
situation.  The question presented to us is whether this intermediate 
occurrence should be “lumped” with the respondeat superior situation in 
which the employer’s negligence is not submitted to the jury, or with the 
independent tortfeasor situation in which the employer’s negligence is 
submitted to the jury.
        The 
Duenez case is a Dram Shop Act case.  The Duenzes sued F.F.P. 
Operating Partners, L.P., for providing alcohol to Ruiz, whose truck collided 
with the Duenzes’ car, causing significant injuries to the family.  Our 
supreme court observed,
  
Causation under the Dram Shop Act is tied to the patron’s intoxication rather 
than the provider’s conduct.  Because the Act imposes liability on 
providers for the actions of their customers regardless of whether the 
provider’s conduct actually caused the injuries suffered, the court of appeals 
in this case concluded that the provider’s liability is purely 
vicarious.  Under the court’s analysis, the provider and the intoxicated 
patron are one and the same, like the employer and the employee in a case 
founded upon the doctrine of respondeat superior.  It is true that, if a 
provider’s liability under the Dram Shop Act were purely vicarious, as the 
court of appeals held, there would be nothing for the jury to apportion between 
F.F.P. and the Duenezes in this case.  But the Act has a direct liability 
component that the court of appeals wholly ignored.  Unlike true vicarious 
liability, in which one party’s actionable conduct is imputed to another, a 
dram shop’s liability stems in part from its own wrongful conduct.  In 
order to impose liability under the Act, the factfinder must conclude that the 
provider made alcohol available to an obviously intoxicated patron whose 
intoxication caused the plaintiff harm . . . . Accordingly, the dram shop 
liability is based on its own wrongful or dangerous conduct, even though the 
statutorily required causal link focuses on the patron’s intoxication . . . .
 
 
Id. 
at *4.
The 
court goes on to conclude,
 
[W]hen the factfinder determines that a provider has violated the Dram Shop Act 
and its patron’s intoxication has caused a third party harm, responsibility 
must be apportioned between the dram shop and the intoxicated patron, as well as 
the injured third party if there is evidence of comparative negligence. The 
resulting judgment should aggregate the dram shop’s and driver’s liability 
so that the plaintiff fully recovers from the provider without assuming the 
risks of the driver’s insolvency.  The dram shop may then recover from 
the driver based upon the percentages of responsibilities that the jury assessed 
between them.
 
 
Id. 
at *5 (emphasis supplied).
        The 
reasoning of the majority of the supreme court parallels the negligent 
hiring/entrustment theory of recovery.  Under both theories, neither are 
pure vicarious liability situations because liability stems from distinct 
wrongful conduct.  In order to impose liability under both situations, the 
fact finder must conclude that a preceding independent action occurred that 
caused the plaintiff harm even though the required causal link focuses on the 
act of the driver.  Further, like the Dram Shop Act, if the hiring or 
entrusting employer is negligent, his liability for the acts of the driver is 
established, but by submitting both the driver’s and the hiring or entrusting 
employer’s negligence to the jury, allowance is made for recovery by the 
hiring or entrusting employer from the driver, based on the percentages of 
responsibility assessed by the jury.
        Therefore, 
we hold that the proper submission in a simple negligent entrustment or hiring 
claim, based upon sufficient evidence to warrant the submission, is to include 
the alleged negligent hiring or entrusting employer in an initial liability 
question and in the comparative negligence questions.
        F. 
Sufficient Evidence
        In 
order to have a question submitted to the jury, sufficient evidence must be 
raised by its proponent, that is, the evidence must raise a material fact 
issue.  Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 
S.W.3d 74, 77 (Tex. 2000).  Bedford asserts that she “pled and proved 
numerous acts of direct negligence of both Aldrich and Western Contractors for 
liability.”  We agree that there is sufficient evidence adduced to 
warrant submission to the jury for decision on the issue of negligent hiring and 
entrustment as to Western and negligent entrustment as to Aldrich.  This 
evidence includes the following:  Western Contractors did not perform a 
driving history check on Moore nor did Western Contractors even have a policy or 
procedure in place for ever performing driving history checks on its drivers; 
Hamrick agreed that a reasonable trucking company exercising reasonable care 
would have verified a prospective commercial driver’s driving history; Hamrick 
admitted at trial that a reasonable trucking company seeing items listed on 
Moore’s driving record would not have employed Moore as an operator of a 
commercial vehicle; Moore was not required to fill out an employment application 
as required by Federal Motor Carrier Safety Regulations (“FMCSR”) section 
391.21; Moore was not required to perform a pre-employment drug screen as 
required by FMCSR section 382.301; there was not a policy or procedure for 
requiring random drug testing as required by FMCSR section 382.305; Moore was 
not required to submit to a drug screen following her first accident while 
driving a company vehicle as required by FMCSR section 382.303; neither Aldrich 
nor Western required Moore to provide them with information from or about her 
prior employers as required by FMCSR section 391.21 and admitted to as the 
standard of care for a reasonable trucking company; and there was not a driver 
qualification file maintained on Moore as required by FMCSR section 391.51, 
which would have contained Moore’s prior driving history, Moore’s prior 
employment history, Moore’s employment application, and a list of Moore’s 
violations of motor vehicle laws and ordinances.
        Further, 
when Moore showed up the morning of September 9, 1999, the day of the collision 
with Mr. Bedford, she had an obvious bandage on her head where she had just 
received nine stitches at an emergency room.  Moore informed Aldrich that 
she had just come from the emergency room where she had been since 
midnight.  Before Moore got behind the wheel of the gravel truck owned by 
Aldrich and began operating the truck under Western’s DOT permit, it was 
apparent that she had suffered a head injury and had been without sleep since at 
least midnight.
        G. 
Application
        For 
two reasons, however, we hold that it was harmless error in this case to fail to 
submit negligent hiring and entrustment in the liability and percentage of 
liability questions.  First, as pointed out in Rosell, the elements 
of negligent hiring are different from the elements of negligent entrustment. 
For negligent hiring, a plaintiff must prove that (1) the employer owed a legal 
duty to protect the employee’s actions and (2) the third party’s sustained 
damages were proximately caused by the employer’s breach of that duty.  Rosell, 
89 S.W.3d at 655. In order to prove a cause of action for negligent entrustment, 
the proponent must show that there was (1) entrustment of a vehicle by the 
owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner 
knew or should have known to be unlicensed, incompetent, or reckless; and (4) 
the driver’s negligence on the occasion in question; (5) proximately caused 
the accident.  Id.  This may require the submission of separate 
negligence issues on different negligence theories when submitted with the 
negligence of other parties.  Id. at 655-56.
        Further, 
the jury determined that Bedford was sixty percent responsible for the accident 
and Moore was forty percent responsible.  The Texas apportionment scheme 
requires the trier of fact to determine the percentage of causation 
attributable to each claimant, defendant, and responsible third party.[4]  The jury question and accompanying instructions were 
consistent with this law.  The court must presume that the jury followed 
the court’s instructions and apportioned the responsibility according to its 
view of how much the parties contributed to causing the accident.  See 
Tesfa v. Stewart, 135 S.W.3d 272, 278 (Tex. App.—Fort Worth 2004, no 
pet.).  There were only two people involved in the accident.  
Therefore, the submission of the acts of “other parties” whose actions 
preceded the actions of Moore at the time of the accident could only have 
contributed to her actions at the accident scene, that is, to her forty percent 
negligence. In other words, because there were only two parties involved in the 
incident, the jury has decided how those actions at the time of the accident 
should be apportioned as far as responsibility is concerned.  What led up 
to those actions at the time of the accident does not change those actions at 
the accident scene but can only be subparts of those respective 
responsibilities.  Aldrich and Hamrick did not cause Bedford to cross the 
highway or Moore to strike that truck.  Therefore, while we believe that 
the proper submission in a simple negligent entrustment or negligent hiring case 
is to submit the negligent entrustor or negligent hiring employer in the general 
liability and comparative questions, under the facts of this case, we conclude 
that it was harmless error to omit them from those questions.
IV. Excluded Evidence
        In 
her second issue, Bedford alleges that the trial court “erred in excluding all 
evidence regarding the positive results of Rita Moore’s post-MVA drug 
screen.”  Following the accident, a DOT-required drug screen showed that 
Moore had methamphetamines in her system.  The trial court excluded all 
evidence concerning the drug screen and its results.  Bedford attempted to 
offer the testimony of Dr. Daniel Drew, a physician retained by DOT who had 
analyzed the drug screen conducted on Moore.  Upon objection, Dr. Drew was 
not allowed to testify about the correctness of the examination and the effects 
methamphetamine can have on an individual.  Dr. Drew also testified outside 
the presence of the jury that the testing showed that sometime between September 
5 and September 9 of 1999, Moore had either eaten or injected or in some other 
way received methamphetamine into her system which was “at least a minute 
amount.  There was enough to make certain that this could not have been 
from second hand smoke . . . or something like that.”  However, Dr. Drew 
also testified that a positive finding for methamphetamines did not prove 
impairment and that he could not tell the jury that Moore was impaired at the 
time of the accident.  Bedford also attempted to offer the lay testimony of 
witness Ronald G. Curry that Moore appeared to be under the influence of drugs 
at the time of the accident and that she appeared to be “hyper.”  On 
objection, these observations were not allowed to be presented to the jury.
        A. Applicable Law and Standard of Review
        A 
trial court’s evidentiary ruling is reviewed under an abuse of discretion 
standard.  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 
43 (Tex. 1998).  A court abuses its discretion only when it rules without 
regard to any guiding rules or principles.  Id.  Exclusion of 
evidence is harmful only if the evidence is controlling on a material issue and 
is not cumulative.  Mentis v. Barnard, 870 S.W.2d 14, 16 (Tex. 
1994); Franco v. Franco, 81 S.W.3d 319, 321 (Tex. App.—El Paso 2002, no 
pet.).  A successful challenge to an evidentiary ruling generally requires 
showing that the judgment turned on the particular evidence in dispute.  Tex. 
Dep’t of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000).  We examine 
the entire record in making this determination of harm. Interstate 
Northborough P’ship v. State, 66 S.W.3d 213, 220 (Tex. 2001).
        Generally, 
drug usage, without further evidence of negligence, is inadmissible.  See 
Trans-State Pavers, Inc. v. Haynes, 808 S.W.2d 727, 729 (Tex. 
App.—Beaumont 1991, writ denied); Dorman v. Langlinais, 592 S.W.2d 650, 
652 (Tex. Civ. App.—Beaumont 1979, no writ).  Bedford cites Nichols v. 
Howard Trucking Co., 839 S.W.2d 155 (Tex. App.—Beaumont 1992, no writ), 
for the proposition that once evidence of improper conduct or negligence is 
presented, a trial court’s exclusion of testimony concerning a party’s use 
of intoxicants is reversible error.  In the Nichols case, the 
deceased driver was found to have an alcohol concentration in his blood of 
.0516, and a urine analysis test revealed that he tested positive for the 
presence of cannabinoids, that is, marijuana.  There was expert testimony 
concerning the adverse effects that alcohol had on the individual’s ability to 
operate an automobile and the effect that marijuana had on an individual.  
The court noted that “evidence of the use of intoxicants is inadmissible as 
immaterial unless there is further evidence of negligence and improper conduct 
of the part of the user.”  Id. at 158.  That is, evidence of 
drug usage must provide some explanation for the negligence and improper 
conduct.  However, this was not present under our facts because Dr. Drew 
could not tie the presence of methamphetamines in Moore’s body to impairment 
at the time of the accident, and therefore could not connect the presence of the 
drug to causation.
        Further, 
because Dr. Drew could not identify any particular level of the drug in 
Moore’s system at time of the accident or state that the amount of the drug in 
her system was at a level at which any impairment could be adduced, there was no 
evidence that the presence of the drug was a causative factor in the 
accident.  We hold that the trial court did not abuse its discretion by 
excluding the testimony of Dr. Drew or Mr. Curry.
V. Conclusion
        Having 
overruled Bedford’s issues, we affirm the judgment of the trial court.
 
  
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
  
PANEL A:   CAYCE, 
C.J.; LIVINGSTON and MCCOY, JJ.
 
CAYCE, C.J. filed a concurring 
opinion.
 
DELIVERED: May 26, 2005


 
  
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-377-CV
 
  
LOIS BEDFORD, INDIVIDUALLY                                               APPELLANT
AND ON BEHALF OF THE ESTATE
OF EDWIN BEDFORD, DECEASED
  
V.
  
RITA ELAINE MOORE, TIM ALDRICH 
                                        APPELLEES
D/B/A T-C TRUCKING COMPANY,
AND SCOTTY HAMRICK D/B/A
WESTERN CONTRACTORS
 
  
------------
 
FROM THE 153RD DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
CONCURRING OPINION
 
------------
 
        I 
join the majority’s opinion, but I concur only in the result reached by the 
majority on the issue of whether the trial court erred in failing to submit the 
negligence of Aldrich and Hamrick to the jury.
        The 
jury found that Bedford was sixty percent responsible for the accident.  
This unchallenged finding is binding on appellants and bars their recovery as a 
matter of law.  Tex. Civ. Prac. 
& Rem. Code Ann. § 33.001 (Vernon 1997).  Therefore, assuming 
without deciding that the trial court erred in failing to submit the negligence 
of Aldrich and Hamrick, I believe the error, if any, was harmless.[5]  See Boatland of Houston, Inc. v. Bailey, 609 
S.W.2d 743, 750 (Tex. 1980) (holding error in submission of jury question is 
harmless when other jury findings support judgment); Tex. & Pac. Ry. Co. 
v. Snider, 159 Tex. 380, 321 S.W.2d 280, 283 (1959) (holding error in 
submitting definition of contributory negligence harmless where judgment rested 
on different jury findings); San Antonio Press, Inc. v. Custom Bilt Machinery, 
852 S.W.2d 64, 65 (Tex. App.—San Antonio 1993, no writ) (stating that when 
unchallenged no-damage finding supports judgment, error in liability finding is 
harmless).
        For 
these reasons, I concur only in the result reached by the majority in overruling 
issue one. I join the remainder of the opinion.
 
   
                                                          JOHN 
CAYCE
                                                          CHIEF 
JUSTICE
  
    
DELIVERED: May 26, 2005



NOTES
* OPINION BY JUSTICE MCCOY;  CONCURRING OPINION BY CHIEF 
JUSTICE CAYCE
    MAJORITY OPINION NOTES
1.  
The liability theories against Aldrich and Hamrick were submitted in separate 
subsequent questions.  These questions were not reached because of the 
jury’s answer to Question No. 2 and the conditioning instruction preceding 
them.
2.  
49 C.F.R. §§ 350.101-399.211 
(2004).
3.  
Act of May 26, 1931, 42nd Leg., R.S., ch. 225, 1931 Tex. Gen. Laws 379, repealed 
by Act of May 17, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws 3242, 
3322.
4.  
Tex. Civ. Prac. & Rem. Code Ann. 
§ 33.003.  This comparative causation system is distinct from one that 
compares the relative fault of the parties.  See generally, Montford, 
J. & Barber, W.,1987 Texas Tort Reform: The Quest for a Fairer and More 
Predictable Texas Civil Justice System 25 Hou. L. Rev. 245, 272-75 (1988).  
For the distinction between comparative fault and comparative causation system, 
see Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 427-28 (Tex. 1984).
    CONCURRING OPINION NOTES
5.  
We may not speculate, as appellant urges us to do, whether the jury might have 
assigned less than fifty percent responsibility to Bedford if it had been 
allowed to consider Aldrich and Hamrick’s negligence.  Instead, we must 
presume the jury followed the trial court’s instructions and apportioned sixty 
percent of the responsibility for the accident to Bedford based on the 
evidence.  See Tesfa v. Stewart, 135 S.W.3d 272, 278 (Tex. 
App.—Fort Worth 2004, pet. denied).