Murphy CLOPHUS and Geneva
Clophus, Appellants,

v.

GENERAL MOTORS
CORPORATION, Appellee.

No. B14–87–1025–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 1989.

Jake Johnson, Houston, for appellants.

Stephen Dillard, Roger D. Townsend, Houston, for appellee.

Before J. CURTISS BROWN, and ROBERTSON and SEARS, JJ.

OPINION

SEARS, Justice.

This is an appeal of a take nothing jury verdict in a products liability case. Finding no reversible error, we affirm.

Murphy Clophus and his wife sued General Motors (GM) for injuries he received when a bus manufactured by GM fell on him, cutting off the oxygen supply to his optic nerve and resulting in blindness. Clophus, who was a Metro[1] mechanic at the time of the accident, alleged (1) that the RTS II–01 bus was defectively designed, and, especially in regard to its six inch ground clearance, was unreasonably dangerous as designed, and (2) that GM had misrepresented the bus to be in conformity with established safety and performance standards. It was his position at trial that this misrepresentation concealed the multiple defects in the bus. The defects so overwhelmed Metro's maintenance crews and facilities as to create conditions of extreme pressure in which mechanics like Clophus were forced to resort to unorthodox repair practices in order to "keep the buses on the streets." The hazardous working

---

1. Metro was not a party in the trial court and consequently is not before us in any capacity on appeal.

atmosphere and attendant risk which resulted allegedly constituted a producing cause of Clophus' injuries.

The jury failed to find either that GM had misrepresented the quality of the RTS II–01 bus or that the buses were defective. It found that Clophus was negligent on the occasion in question and that his negligence was the sole cause of the accident. It attributed no negligence to GM and awarded no sum in answer to the damage issues.

Clophus raises eleven points of error all of which were preserved in his motion for new trial. The first nine of these allege that the jury's verdict was so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. This complaint, raised by the party with the burden of proof on the issue, requires us to review all the evidence as with a factual sufficiency challenge. Points ten and eleven are no-evidence points. Point ten alleges that it was established as a matter of law that negligence other than Clophus' caused the accident. Point eleven alleges that the jury's response of $0.00 to the damage issues was legal error because Clophus' injuries were established as a matter of law.

We review a jury's failure to find in favor of a party on a particular issue under the authority recently confirmed by the Supreme Court in *Cropper v. Caterpillar Tractor Company,* 754 S.W.2d 646 (Tex. 1988). Regardless of which party had the burden of proof at trial, and regardless of which party prevailed before the jury, the verdict loser has the right to assert on appeal that the jury's verdict was either not supported by the evidence or was against the great weight and preponderance of the evidence, as appropriate. *Cropper* at 650. According to the standard set out in *Pool v. Ford Motor Company,* 715 S.W.2d 629, 634 (Tex.1986), the court of appeals may reverse and remand a case for a new trial when it concludes that the jury's "failure to find" is against the *great weight* and preponderance of the evidence. *Cropper* at 650–651. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

(Emphasis added.) No affirmative evidence is required to be presented to support a jury's non-finding, however. *Herbert* and *Cropper, supra.* To so require would be to improperly shift the burden of proof.

Further, in reviewing the state of the evidence as to the fact questions presented, so long as the jury was presented with evidence sufficient that reasonable minds could differ, the appellate court has no authority to substitute its judgment for that of the jury. *Cropper* at 651; *Herbert* at 143–144; *Pool* at 634. As a safeguard against the possible violation of this rule, an appellate court which reverses and remands on grounds that the verdict was contrary to the evidence is required to detail the evidence relevant to the issue in consideration along with its reasons for reversal. *Id.* The court's opinion "should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." 715 S.W.2d at 629; 754 S.W.2d at 652–653.

Appellant's points one through nine challenge the jury's findings against Clophus and in favor of GM on all liability issues, specifically the allegations of misrepresentation and defective design. Of these issues, numbers 3, 4, 5, 7, and 9 were conditioned on affirmative responses to other issues. Since no affirmative responses were given, none of these conditional issues was answered. Questions 10, 11 and 12 inquired as to the negligence of Clophus and included a comparative negligence issue. In response to these issues, the jury found Clophus' negligence to be fully responsible for the accident. Issues 13, 14 and 15 were the damage issues. The jury awarded no damages for Clophus' uncontroverted injuries, which included a fractured pelvis and scapula in addition to his blindness, nor for his wife's loss of consortium and household services. They did not answer the exemplary damages issue which was predicated on the liability issues. Appellant addresses points one through nine as a group and we will likewise consider them together.

A review of the record shows that extensive conflicting evidence was introduced by both sides at trial regarding the design, reliability and maintainability of General Motor's RTS II–01 bus. Plaintiff's evidence tended to show that while GM represented that the RTS II–01 met "all specified and implied standards of safety, performance, reliability, and quality," the bus actually experienced repeated mechanical breakdowns. Although the plaintiff's witnesses and documents attributed these breakdowns to alleged design defects, the defendant introduced evidence that the problem existed because Metro's maintenance was improper and its mechanics were inept.

In addition, the defendant introduced evidence that on the occasion in question the plaintiff was acting in disregard of GM's and Metro's recommended repair and safety procedures in lifting the bus with a fork lift and then crawling under it to retrieve a wrench he had dropped. A co-worker of the plaintiff testified that he and Clophus twice attempted to jack up the bus with the fork lift and watched it roll off both times. Each time they chocked the front wheels until, on the third try, it appeared that the procedure was working. After watching for "a while" they were satisfied the bus wouldn't move again and Clophus got under it. He had been under the bus for about 30 seconds when it rolled off the fork lift again and fell on him. As his co-workers lifted the bus to free Clophus, it fell off the forklift and onto Clophus a second time. While Clophus claimed that the pressure to get the buses back on the streets led to this and other disregard of safety procedures, GM focused on the availability of jacks and jack stands for lifting the bus as well as the availability of shop air for inflating the bus' suspension system.

The evidence also showed that the low ground clearance complained of by appellant as a design defect was in fact a requirement of the City of Houston. The bus was built to the specifications of the city so that, by deflating the air suspension system, it could be lowered at bus stops for easy entry at curb level. Also, there was extensive evidence that the Metro mechanics were poorly trained and supervised and that the "down time" of the buses was caused by these poorly trained and unqualified mechanics.

Before we may disregard the jury's findings of non-liability, it must appear that its answers are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Southwest Inns, Ltd. v. General Electric Co.*, 744 S.W.2d 258, 267 (Tex.App.—Houston [14th Dist.] 1987, writ denied). Our review of the evidence reveals that sufficient evidence was presented by both sides such that reasonable minds could differ regarding the quality of the buses and the negligence of the parties. In spite of the strong evidence presented by the plaintiff, the jury obviously gave more weight to the contrary evidence presented by the defense in finding that the bus was not defective as designed and that GM's conduct was not a contributing cause of Clophus' injuries. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). This court may not substitute its opinion for that of the trier of fact. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Pool v. Ford Motor Company, supra; Cropper v. Caterpillar Tractor Co., supra.* Appellant's first nine points of error are therefore overruled.

Appellant next complains of the jury's failure to award any damages in spite of Clophus' obvious and uncontested injuries. However, while a finding by the jury of zero damages in such a case may raise a red flag highlighting the possibility that the jury acted out of bias or prejudice in reaching its verdict, we have no authority to so speculate in reaching our decision. The rule in this state has been and is that without a favorable response on the liability issues, appellant cannot show that the refusal to find damages was harmful. *Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334 (1939); *Sharpe v. Safway Scaffolds Co. of Hous-*

*ton,* 687 S.W.2d 386, 389 (Tex.App.—Houston [14th Dist.] 1985, no writ).

While we believe the better practice is to submit damage issues unconditionally in order to avoid informing the jury of the effect of its answers, it has been held that the trial court may predicate damage issues on an affirmative finding of liability. *H.E. Butt Grocery Co. v. Paez,* 742 S.W.2d 824, 825 (Tex.App.—Corpus Christi 1987, writ denied). If the damage issues could have been conditionally submitted, it cannot be error for the jury to decline on its own to compute damages when it has found no liability. *Id. See also,* TEX.R.CIV. P. 277 as amended (effective January 1, 1988) which states: "The court may predicate the damage question or questions upon affirmative findings of liability." By its adoption of this amendment to the rule, the Supreme Court appears to have approved the result we must necessarily reach under the reasoning set out in the cases. Appellant's points of error ten and eleven are overruled.

The judgment of the trial court is affirmed.