**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00020-CV**
_____

**CHARITY CRAVENS, WYATT CRAIG CRAVENS SR.,
AND KATHY CRAVENS, Appellants**

**V.**

**ALISAM ENTERPRISES, LLC, ALISAM HOLDINGS, LLC,
AND GROVER LEE BURNHAM JR., Appellees**

_____

**On Appeal from the 1st District Court
Newton County, Texas
Trial Cause No. 14032**
_____

**MEMORANDUM OPINION**

Forty-one-year-old Wyatt Craig Cravens Jr. (hereinafter "Wyatt") died in an automobile accident in 2016. Wyatt was driving his Chevrolet Corvette north on Highway 287 when his vehicle was involved in a collision with a tractor-trailer. Members of Wyatt's family—Charity Cravens, Wyatt Craig Cravens Sr., and Kathy Cravens (collectively "Plaintiffs")—brought a lawsuit against Alisam Enterprises, LLC, Alisam Holdings, LLC, and Grover Lee Burnham Jr. ("Burnham")

1

(collectively "Appellees" or "Defendants") asserting claims for negligence and wrongful death and seeking damages.[1,2] The Plaintiffs alleged that Burnham, who was driving the tractor-trailer for Alisam, failed to yield the right-of-way and turned in front of Wyatt's Corvette, causing the accident.

The case was tried before a jury. In Question 1 in the Jury Charge, the jury was asked and responded as follows:

QUESTION 1

Did the negligence, if any, of those named below proximately cause the occurrence in question.
Answer "Yes" or "No" for each of the following:

a. Grover Lee Burnham                    NO
b. Craig Wyatt Cravens, Jr.              YES

After the trial, the trial court entered a take-nothing judgment in favor of the Defendants, dismissed the Plaintiffs' claims with prejudice, and ordered that the Plaintiffs pay Defendants' court costs. Plaintiffs filed a motion for new trial, which the trial court denied. In this appeal, Appellants challenge the admission and

---

[1] Charity Cravens is an ex-wife and the mother of Wyatt's two minor children, and Wyatt Cravens Sr. and Kathy Cravens are Wyatt's parents. Wyatt's adult daughter, Melissa Ordesky, filed a plea in intervention. Ordesky nonsuited her claims during the trial, and she is not a party to this appeal.

[2] Plaintiffs' second amended petition named Plains Transportation Company ("Plains") as a defendant, but in a pretrial order, the trial court dismissed with prejudice the claims against Plains. Plains is not a party to this appeal.

exclusion of certain evidence and the sufficiency of the evidence to support the jury's verdict. We affirm.

Evidence at Trial

Testimony of Grover Lee Burnham Jr.

Burnham testified that he was employed by Plains Transportation on April 10, 2016, and he was involved in an accident that day about 6:30 a.m. at the intersection of South Masterson Road and Highway 287 near Amarillo. Burnham told the jury that, as he prepared to cross the intersection and turn left going southbound, "I took three looks. . . . I saw the truck the first time I looked. The second time I looked, I saw the truck and the car. The third time I looked I saw the truck." At one point, Burnham saw a car passing an SUV but the last time he looked, he only saw the SUV. Burnham testified "[w]hen I started my turn, I didn't even know [Wyatt] was on the road." According to Burnham, he thought he had given enough room for a northbound driver to avoid his tractor-trailer.

Burnham testified that he spoke with Trooper Snelgrooes within about twenty minutes of the accident, and the Trooper asked him to write a brief statement. Burnham's written statement was admitted as Exhibit 3, in which he stated:

> I was stopped on 1912 at 287 intersection, looking to merge with south bound traffic. 18w-Truck was passing heading south & I looked for north bound traffic & 2 vehicles topped the hill as the 18w-truck passed so I pulled out with my flashers on - I drive this route a lot so the distance between me & the north bound cars seemed normal or OK by my judg[]ment. I glanced for south bound traffic once more and looked

3

back at the north bound traffic and hit the gas pedal more - because the two vehicles had separated more & I was thinking this guy is speeding up[,] doesn't he see my blinkers . . I stayed on the gas pedal I thought I cleared at least a lane for the vehicle to pass by but he hit the trailer bumper. I was just wondering how did he hit me because both vehicles were real close to each other over the hill, then all of a sudden one was by me & the other one was still back at what look like a normal distance.

Burnham testified that the first call he made was to dispatch. After the collision, Burnham returned to Plains and talked with Scott Murdock, the safety director at the time, and Murdock asked Burnham to write a brief statement. Burnham's statement was admitted as Exhibit 5.003 and stated:

Left Tyson on 1912 got to 287 checked southbound traffic a 18w Truck was passing & north bound traffic was 2 vehicles that had just topped the hill[] coming out of Tyson on 1912 as usual since the 18w Truck passed by I pulled on out the 2 vehicles headed north was still close together so I checked south bound again - nothing was coming so I hit the gas checked the north bound again and I saw the SUV but not the other car . . I was thinking what happen[ed] to the car so I push[ed] on the gas more and heard a bump. I was sure I had cleared the left lane for sure because I was turning in the R hand lane of south bound traffic.

Burnham denied talking with a woman named Lori about the accident.

According to Burnham, he did a pre-trip inspection after the loaded trailer was hooked up, and the lights on the trailer were working. Burnham testified there were three lights on the side of the trailer at the top and three or four lights at the bottom, and "you can see it lights up like a Christmas tree [and] it would stand out in the dark."

4

Burnham testified that he did not see Wyatt speed, swerve, or drive erratically, and he only saw Wyatt's vehicle "about two seconds[]" when Wyatt was passing the SUV. Burnham did not believe he was responsible for the accident, but he believed that Wyatt "had a lot of responsibility" for it.

Testimony of Trooper Jared Snelgrooes

Trooper Jared Snelgrooes with Texas Department of Public Safety testified that he was a trooper at the time of the accident and his duties included investigating accidents. Snelgrooes heard a call of a "vehicle versus truck-tractor crash" on his way to work about 6:00 a.m., and he went to the site. Snelgrooes saw debris in the road, a Corvette was in the ditch but still in gear and running, and the driver was unresponsive and appeared to be deceased. Snelgrooes also saw an SUV with no apparent damage, he spoke with a man at the scene who identified himself as Demetry Price, the man was walking toward the SUV, and Price told Snelgrooes he had been traveling in his own vehicle in the same direction as Wyatt, and while following Wyatt's vehicle he had seen Wyatt's brake lights come on very briefly.

Snelgrooes spoke with Burnham in his patrol vehicle and the "dashcam" camera in the patrol vehicle recorded the conversation. The dashcam recording was admitted as Exhibit 28. According to Snelgrooes, Burnham told him he saw the headlights, he started across the intersection, and he was "all the way across 287 pretty much[]" when the car hit the back end of his trailer, but Burnham thought he

5

had given enough room for a driver to get by his truck. Snelgrooes took this to mean that Burnham was blocking the northbound lane. Snelgrooes asked Burnham to give a written statement of what happened, and Snelgrooes testified that he believed that Burnham started into the intersection even though Burnham saw two vehicles approaching.

Snelgrooes did not find any safety or mechanical issues with either the Corvette or the tractor-trailer that would have caused the collision. Snelgrooes did not determine how fast the Corvette had been traveling, and he thought the main contributing factor in causing the crash was Burnham's failure to yield the right-of-way. At one point, Snelgrooes learned that a toxicology analysis had detected THC and methamphetamines in Wyatt's blood, but Snelgrooes testified that the toxicology results did not change Snelgrooes's conclusion. Snelgrooes identified Exhibit 31 as the DPS crash report, which stated that Burnham's failure to yield right-of-way was the main factor contributing to the crash. Snelgrooes testified that the speed limit where the collision occurred is 75 miles an hour.

Testimony of Robin Wright

Robin Wright testified that he learned about accident reconstruction when he was employed as a state trooper, and since retiring from the DPS in 2009, he has worked for six accident reconstruction firms, including his own firm. Wright was involved in the reconstruction of more than 5000 accidents while he was with the

6

DPS, and as a professional reconstructionist he has looked at close to 500 additional collisions involving accidents with an 18-wheeler. In addition to the special training he received with the DPS, he has continually updated his education by attending conferences on crash reconstruction, including conferences at the University of North Florida and Northwestern University, and annually attends a school related to the technology that deals with the data that is recorded in air bag control modules and engine control modules. Wright has special training and experience in not only accident reconstruction, but he also held a CDL license. Wright is the owner of his own reconstruction firm, and he was hired by the Plaintiffs as an expert witness in this case. According to Wright, as an expert on crash reconstruction, he goes to the scene, reviews photographs, looks at previous investigations or reports, and considers the speed of vehicles and drivers' actions before the crash. He then analyzes the information and applies the principles of physics, forms opinions, writes reports, and submits his findings to the attorneys that hired him. Wright testified that "[t]he cause of this collision in my opinion was the failure to yield right-of-way on the part of the Burnham 18-wheeler." According to Wright, Burnham entered the intersection in front of Wyatt's Corvette, and Burnham was blocking the roadway. Wright did not believe that excessive speed was a contributing factor to the accident, and he calculated that Wyatt was traveling at 48 miles an hour at the time of impact.

Wright testified that the Corvette traveled about 1300 feet after exiting the underside of the trailer. Wright used a pickup truck to do a "free roll test[]," and the truck rolled 1.1 mile, or about four times the distance the Corvette went, which indicated to Wright that the Corvette was not going 60 miles an hour when it exited from under the trailer.

Wright recalled reviewing a statement by Lori Epps that indicated the truck was stopped in the median waiting for traffic to clear to make a left turn and was blocking the northbound lanes. Wright also reviewed the toxicology report on Wyatt, but Wright believed "this is a case of vehicle positioning [and] this crash would have happened to any driver, sober or intoxicated[.]" Wright reviewed the deposition of Dr. Mike James, Defendants' accident reconstructionist, but he disagreed with James that Wyatt had been traveling at 92 miles an hour at the time of impact.

On cross-examination, Wright agreed that he served in a consulting or assisting role in some of the accident reconstructions with which he had been involved, and he did not personally reconstruct 4000 accidents and that he had never crash-tested an under ride. Wright also agreed that he calculated the Corvette's speed by multiplying feet-per-second for a given speed by the distance traveled and that he did not derive speed from "an exact acceleration calculation" from the Corvette. Wright agreed that the truck he used in his roll test was heavier than a Corvette and would have more mass and momentum, and that in Wright's test, the pickup was in

neutral whereas Wyatt's Corvette was in gear. Wright testified that he did not review the toxicologist's report and based on what he did review, he "saw no signs of impairment on the actions of [Wyatt]."

Testimony of Dr. Mike James

Mike James, Ph.D. testified that he is a retired professor from Texas A & M University and the Texas Transportation Institute and the owner of Stress Dynamics Inc., a firm devoted primarily to accident reconstruction. James has degrees in mechanical and civil engineering, and he has taught courses in accident reconstruction at TAMU.

In this case, James reviewed Trooper Snelgrooes's crash report; Plains's accident report; a police survey of the accident site; DPS photographs of the site; his own field notes; depositions of Burnham, DPS Weights and Measures Officer Gary Davis, Trooper Snelgrooes, Dr. Wayne Snodgrass, and Robin Wright; and reports by Wright, Snodgrass, and Plains. James also considered a statement by Lori Epps that the truck was stopped in the median, but James discounted this statement because Epps was not at the scene and Burnham had indicated he stopped at the stop line.

From the materials he reviewed, James determined the Corvette was traveling "at least 92 miles an hour[,]" before striking the trailer and the tractor-trailer was going 11 miles an hour at the time of impact. In determining Wyatt's speed, James

9

took into consideration the damage to the trailer and the fact that the Corvette traveled the distance of "five football fields[]" after the collision. James testified that if the Corvette had been going the speed limit, the rear end of the trailer would have cleared both lanes of travel. According to James, even traveling at 92 miles an hour from a point 1044 feet from where the collision occurred, Wyatt could have cleared the trailer by braking lightly. James believed the evidence showed that Burnham made "a good turn" because Price did not hit him.

On cross-examination, James testified that Texas law "assumes that the [driver] that is stopped has the right to assume that the oncoming vehicle is traveling at the speed limit[,]" but he agreed he is not a law enforcement officer or a lawyer. James agreed that, when seeing headlights in the dark, it is difficult to judge how fast that vehicle is traveling. According to James, the physical evidence of the accident did not provide a basis for Trooper Snelgrooes to conclude that Burnham had stopped in the median and "[t]here's no testimony that [Burnham] was stopped in the median, other than Ms. Epps who was not there."

Testimony of Dr. Wayne Snodgrass

Dr. Wayne Snodgrass testified that he is a physician who is board-certified in pharmacology and toxicology, a faculty member at the University of Texas Medical Branch at Galveston, and the medical director for the Poison Control Center for Houston and Southeast Texas. Snodgrass reviewed the toxicology report for Wyatt

10

that identified methamphetamine and marijuana in Wyatt's blood. Snodgrass testified that the active level of marijuana in Wyatt's blood was 5.9 nanograms, and he estimated that it had been three to four hours since the last ingestion of marijuana. Snodgrass testified that the effects of 5.9 nanograms of marijuana include euphoria, possible hallucinations, decreased reaction time, cognitive dysfunction, and decreased ability to perceive the environment, and it would not be safe to drive. Snodgrass also testified that the toxicology report showed a blood concentration of 910 nanograms for methamphetamine, and it would have been less than nine hours since Wyatt ingested methamphetamine. According to Snodgrass, 910 nanograms is "far beyond the therapeutic range[]" and the adverse effects of such a concentration of methamphetamine include agitation, hallucination, paranoia, slowed visual and auditory information processing, and a decreased ability to perceive one's environment. Snodgrass testified that a level of 910 nanograms of methamphetamine would make a person "[m]arkedly dysfunctional[]" and it would make it unsafe for a person to drive. According to Snodgrass, the effects of marijuana and methamphetamine are additive.

Additional Evidence Admitted at Trial Relevant to the Issues on Appeal

The autopsy and toxicology reports for Wyatt were admitted as Defendants' Exhibits 8, 9, and 10. Jason Kelly testified that he was the corporate safety officer for Alisam at the time of trial, that he had no personal knowledge of the accident and

was testifying as a corporate representative, that Murdock was the safety director for Alisam at the time of the accident, and Lori Epps was a clerk in the safety office.

## Issues

Appellants raise the following issues on appeal:

Issue No. 1: The trial court abused its discretion in admitting the toxicology report because it lacked probative value and was unfairly prejudicial. The admission of the toxicology report persuaded the jury to base its decision on emotion and bias rather than the weight of the evidence presented.

Issue No. 2: The trial court abused its discretion in admitting the irrelevant and prejudicial testimony of Dr. Snodgrass because there was no evidence of contributory negligence and Dr. Snodgrass could not point to any improper conduct on the part of [Wyatt].

Issue No. 3: The trial court abused its discretion by excluding the written statement of Lori Epps which was admissible pursuant to Rule 803 of the Texas Rules of Evidence under the business records exception.

Issue No. 4: The jury's verdict was against the overwhelming preponderance of the evidence which established that Mr. Burnham's failure to yield the right of way was the proximate cause of the crash. There was insufficient evidence to support the jury finding that [Wyatt] was negligent.

## Admission and Exclusion of Evidence

Issues one, two, and three pertain to the exclusion or admission of evidence. Evidentiary rulings are committed to the trial court's sound discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (citing *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam)). A trial court

12

abuses its discretion when it acts without regard for guiding rules or principles. *Id.* (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). "The trial court has extensive discretion in evidentiary rulings, and we will uphold decisions within the zone of reasonable disagreement." *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). Even if the trial court abused its discretion in ruling on the admission or exclusion of certain evidence, reversal is only appropriate if the error was harmful—that is, it probably resulted in an improper judgment. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *see also* Tex. R. App. P. 44.1, 61.1. We will uphold a trial court's ruling on the admission of evidence if there is any legitimate basis for the ruling. *See Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 762 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g)). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the evidence excluded or admitted. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) (citing *Alvarado*, 897 S.W.2d at 754).

Admission of the Toxicology Report

Appellants argue that the toxicology report was inadmissible because evidence of drug or alcohol use must be tied to evidence of negligence and Alisam

13

failed to provide evidence of overt negligent conduct by Wyatt. Appellants also argue that the trial court erred in admitting the toxicology report because it was not relevant, and it was extremely prejudicial. According to Appellants, the Defendants failed to tie the evidence of Wyatt's intoxication to evidence of his negligence. And, Appellants argue that the admission of the toxicology report probably resulted in the rendition of an improper judgment.

Generally, evidence that a party to an accident was intoxicated or impaired is not, in and of itself, evidence that the party acted negligently in relation to an accident. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836-37 (Tex. 2018) (citations omitted). However, such evidence is probative if it is relevant to that party's actions in failing to conform to an appropriate standard of care. *Id.* at 837; *see also Nichols v. Howard Trucking Co., Inc.*, 839 S.W.2d 155, 157 (Tex. App.—Beaumont 1992, no writ) (no error in admission of positive drug screen result where plaintiff did not demonstrate that the entire case turned on such evidence); *Trans-State Pavers, Inc. v. Haynes*, 808 S.W.2d 727, 733 (Tex. App.—Beaumont 1991, writ denied) (evidence of the use of intoxicants is admissible if there is other evidence of negligent or improper conduct). When there is other evidence that the driver was negligent, then a driver's intoxication may be considered by the jury as probative evidence to be considered along with other factors, such as driving ability,

vigilance, judgment, and reactions. *See JBS Carriers*, 564 S.W.3d at 837 (citing *PPC Transp. v. Metcalf*, 254 S.W.3d 636, 642-43 (Tex. App.—Tyler 2008, no pet.)).

In this case, Dr. Mike James, Appellees' reconstruction expert, testified that Wyatt was traveling "at least 92 miles an hour[,]" and Trooper Snelgrooes testified that the speed limit was 75 miles per hour. Dr. James testified that if Wyatt had been driving the speed limit, "the rear of the trailer would have cleared both the lanes[]" before Wyatt's vehicle reached the trailer and he would have had time to avoid the collision. Dr. James also testified that even though his calculations showed Wyatt was traveling at 92 miles per hour, Wyatt still could have avoided the accident by braking. The post-mortem toxicology report showed the presence of marijuana and methamphetamine in Wyatt's blood. The trial court did not err in allowing the admission of the toxicology report into evidence, and the factfinder could have considered the toxicology results in conjunction with the testimony about how fast Wyatt was driving. *See JBS Carriers*, 564 S.W.3d at 837; *Nichols*, 839 S.W.2d at 157.

Under Rule 403, otherwise relevant evidence may be excluded if it is unfairly prejudicial. *See* Tex. R. Evid. 403; *JBS Carriers*, 564 S.W.3d at 838-39. The Texas Supreme Court has explained that evidence of a party's intoxication is not unfairly prejudicial when it allows the jury to consider an alternative explanation for the party's conduct. *See JBS Carriers*, 564 S.W.3d at 839-40; *see also Nichols*, 839

15

S.W.2d at 158 (no unfair prejudice where introduction of a urinalysis test provided some explanation for negligence and improper conduct). That said, even if the trial court had erred in allowing the toxicology report into evidence, there was other evidence presented to the jury that Wyatt was speeding, and we cannot say the whole case turned on the toxicology report, and any error in admitting the report was not reversible error. *See Able*, 35 S.W.3d at 617.

Appellants also argue that certain questioning of Jason Kelly, safety officer for Alisam, by Appellees' attorney about whether Alisam, in making hiring decisions, considered whether its drivers would encounter someone driving under the influence of drugs. According to Appellants, this testimony was unfairly prejudicial and served no purpose other than to elicit a negative reaction from the jury. However, at trial, the Plaintiffs' attorney objected to the question as "an improper question, improper foundation, argumentative, attorney testifying[]" and not on the basis of Rule 403. The argument on appeal does not comport with the objection at trial, and Appellants have not preserved error on this point. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639-40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

But even if it was error to admit the toxicology report, at trial, Appellants questioned their own expert, Robin Wright, about the toxicology report. A party may not complain of the admission of improper evidence offered by the other side when

16

the complaining party itself has introduced the same or similar evidence at trial. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex. 1984); *see also Comm'n for Lawyer Discipline v. Cantu*, 587 S.W.3d 779, 787 (Tex. 2019) (explaining that a party opens the door to admission of evidence by asking one of its experts about the evidence and cannot complain about admission of such evidence on appeal).

In addition, Appellants' brief challenges certain remarks about drugs made during Appellees' closing argument. Appellants did not object to these remarks during the trial, so they have not preserved this complaint on appeal. *See* Tex. R. App. P. 33.1(a); *McShane*, 239 S.W.3d at 235. We overrule Appellants' first issue.

Admission of Testimony by Dr. Snodgrass

Appellants' second issue argues that the trial court should have limited the testimony of Dr. Snodgrass to exclude any testimony about drugs because "there was no evidence of contributory negligence" and Snodgrass could not identify any improper conduct by Wyatt. Appellants argue that Snodgrass did not tie the presence of marijuana or methamphetamine to impairment at the time of the accident or connect the presence of drugs to the cause of the accident.

Dr. Snodgrass testified that the toxicology report showed a blood concentration of 910 nanograms of methamphetamine. According to Dr. Snodgrass, methamphetamine at that level is "[m]arkedly dysfunctional[]" and "beyond the

17

therapeutic range[]" and could result in agitation, hallucination, paranoia, a decreased ability to perceive one's environment, and a slowdown of visual or auditory processing. Snodgrass testified that at a level of methamphetamine of 910 nanograms, it would not be safe for a person to drive. Dr. Snodgrass also testified that 5.9 nanograms of active marijuana and 21 nanograms of a metabolite of marijuana were present in the blood drawn from Wyatt. Snodgrass estimated that the levels suggested to him that it had been three to four hours since Wyatt last ingested marijuana. According to Snodgrass, the ingestion of marijuana may produce a sense of euphoria, a decreased ability to perceive the environment, a decreased reaction time, and cognitive dysfunction. In Dr. Snodgrass's opinion, it would not be safe for a person to drive with 5.9 nanograms of marijuana in his system. Snodgrass also testified that the adverse effects of marijuana and methamphetamine are additive.

According to Appellants, Trooper Snelgrooes considered the toxicology report and concluded that "Burnham's failure to yield [the] right-of-way[]" was the main contributing factor in the crash. And, Snelgrooes testified that the toxicology results did not affect his assessment. We cannot say that the trial court abused its discretion in allowing Dr. Snodgrass to testify about the drugs that were found in Wyatt's blood. The trial court could have determined that Dr. Snodgrass's testimony about evidence of drugs in Wyatt's blood in conjunction with other evidence about the crash was relevant in determining how the accident occurred and in considering

18

Wyatt's and Burnham's "vigilance, judgment, and reactions as a driver[.]'" *See JBS Carriers*, 564 S.W.3d at 837 (quoting *PPC Transp.*, 254 S.W.3d at 644).

Appellants argue that because Dr. Snodgrass's testimony did not "tie the presence of marijuana or methamphetamine to impairment at the time of the crash or connect the presence of the drugs to causation[,]" his testimony was irrelevant and misleading. We disagree.

"[P]roximate cause need not be supported by direct evidence, as circumstantial evidence and inferences therefrom are a sufficient basis for a finding of causation." *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987). Expert testimony is not required to show that a driver's use of drugs or alcohol caused a collision because causation may be proved by circumstantial evidence. *See Ticknor v. Doolan*, No. 14-05-00520-CV, 2006 Tex. App. LEXIS 6717, at **5-10 (Tex. App.—Houston [14th Dist.] July 27, 2006, pet. denied) (mem. op.) (citing *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992)).

Appellants argue that Snodgrass testified that Wyatt's drug use was "the sole cause of the crash[]" or the "proximate cause of the collision[,]" but we note that Appellants provided citations in their appellate brief to Snodgrass's deposition and their Motion to Exclude Drug Evidence and Defendants' Response to Plaintiffs' Motion to Exclude Drug Evidence that appear in the clerk's record and not to Snodgrass's testimony at trial. The witness did not make these statements at trial,

and the jury could not have considered them, nor did the entire case turn on such statements. We conclude there is no harmful error requiring reversal. *See Able*, 35 S.W.3d at 617. We find no abuse of discretion in the admission of Snodgrass's testimony, and we overrule Appellants' second issue. *See Waldrip*, 380 S.W.3d at 132.

Exclusion of Statement by Lori Epps

Appellants also argue that the trial court abused its discretion in excluding a written statement by Lori Epps, who was a safety clerk for Alisam at the time the accident occurred and who did not testify at trial. Appellants argue that Epps's statement was prepared the day of the accident "most likely after speaking with Burnham[]" and in her statement she said in part "our driver was in crossover waiting to make a turn on East 287 when other vehicle made contact with the rear of the DOT bumper on our trailer." According to the Appellants, the statement was admissible as an exception to the hearsay rule because it was a business record and because it was a statement against interest. Appellants also argue that the statement should have been admitted because Burnham's testimony deviated from the statements to Trooper Snelgrooes.

Appellees argue that Epps's statement was not admissible as a business-record exception to the hearsay rule because Epps had no personal knowledge of the accident. *See* Tex. R. Evid. 803(6) (a business record must be made by "someone

20

with knowledge[]"). According to Appellees, Epps's note in the company accident report was hearsay within hearsay, which is not protected by the business records exception. *See Nissan Motor Co.*, 145 S.W.3d at 140 (under the business records exception, the employee making the record must have personal knowledge, and any hearsay within hearsay in company records requires a separate exception in addition to that for business records generally).

Burnham testified that, after the accident, he called dispatch and he talked with Scott Murdock. Burnham denied that he talked with Epps about the accident. Kelly testified that Epps may have gotten the second page of the accident report "from a handwritten note from the dispatcher[,]" and Kelly believed that the handwritten part was not correct and came from someone other than Burnham. In a pretrial hearing, the court stated that Epps's statement was "kind of her interpretation of what he said[]," and the trial court then excluded the statement as hearsay for which no exception applied, and indicated that it would consider later whether the statement could be used for impeachment purposes depending on "how the testimony develops[.]" During trial but outside the presence of the jury, the trial court explained:

> My concern is this is, number one, this is Lori Epps'[s] handwriting. She signed it. We don't have her deposition regarding this question. She's not here for live testimony to ask her where did you get this information, dispatch. Was it a buddy -- I don't know where it came from. Is this her own synopsis? To use that as a fact, you know, when you have attached the driver's statement like this. Do you see where

21

I'm going? You know it's a problem. . . . To me it's pure hearsay. . . . Were they her comments or directly what the driver told her? I have no way to verify that. . . . I don't think it's an exception to the hearsay rule.

The trial court could have reasonably concluded that even if Epps wrote the personal note, she did not have personal knowledge of the accident when she wrote the note, or that her statement contained hearsay within hearsay. *See* Tex. R. Evid. 803(6); *Nissan Motor Co.*, 145 S.W.3d at 140. The trial court's ruling excluding the statement from Epps is within the zone of reasonable disagreement. *See Diamond Offshore Servs.*, 542 S.W.3d at 545. Additionally, Appellants have not demonstrated that the judgment turns on the exclusion of Epps's alleged statement that "our driver was in crossover waiting to make a turn on East 287 when other vehicle made contact with the rear of the DOT bumper on our trailer." *See Able*, 35 S.W.3d at 617 (citing *Alvarado*, 897 S.W.2d at 754). Further, Epps's note would have been cumulative of Wright's testimony, and exclusion of the note is not reversible error. *See Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018) ("Exclusion is likely harmless if the evidence was cumulative."). Therefore, we overrule Appellants' third issue.

## Sufficiency of the Evidence

In Appellants' fourth issue, Appellants argue that the jury's verdict was against the overwhelming preponderance of the evidence and there was "less than a scintilla" of evidence to support the jury finding that Wyatt was negligent. In support of this position, Appellants cite the following evidence: Trooper Snelgrooes's

22

accident report stated that the contributing factor to the crash was Burnham's failure to yield the right-of-way and that his inattention may have contributed to the crash, and Snelgrooes also testified that Burnham's failure to yield right-of-way was the cause of the crash; section 545.151 of the Transportation Code requires a driver at a stop sign or intersection to yield right-of-way before proceeding into the intersection; Robin Wright, the accident reconstructionist for the Plaintiffs, testified that section 545.151 informed his opinion that "[t]he cause of this collision in my opinion was the failure to yield right-of-way on the part of the Burnham 18-wheeler[]" and that a person does not lose the right-of-way if he is speeding; and the written statement Burnham gave to law enforcement stated that he proceeded into the intersection even though he had seen two vehicles, he saw the SUV and "was thinking what happen[ed] to the car[.]" According to Appellants, the only evidence that Wyatt was speeding was provided in Dr. James's testimony, which Appellants argue relied on "cherry picked" information and "completely disregarded" Burnham's statements to Snelgrooes and to Alisam. We construe Appellants' brief to assert both legal and factual sufficiency challenges. *See Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995) (appellate courts should construe briefs liberally and consider the substance of the parties' arguments and not merely how points of error are worded).

In a legal sufficiency challenge, we consider whether the evidence at trial would enable a reasonable and fair-minded factfinder to reach the verdict under review. *Gunn*, 554 S.W.3d at 658 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

> Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*Id.* (citing *Bustamante v. Ponte*, 529 S.W.3d 447, 455-56 (Tex. 2017); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). The record contains more than a mere scintilla of evidence when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* (citing *King Ranch, Inc.*, 118 S.W.3d at 751). Conversely, the record contains less than a scintilla when the evidence offered to prove a vital fact's existence is "'so weak as to do no more than create a mere surmise or suspicion.'" *Id.* (quoting *King Ranch, Inc.*, 118 S.W.3d at 751). All the record evidence must be considered "'in the light most favorable to the party in whose favor the verdict has been rendered,'" and "'every reasonable inference deducible from the evidence is to be indulged in that party's favor.'" *Id.* (quoting *Bustamante*, 529 S.W.3d at 456); *see also Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

24

In our legal sufficiency review, we credit all evidence favorable to the jury's "no" answer if a reasonable factfinder could; we disregard evidence that is contrary to the jury's "no" answer unless a reasonable factfinder could not. *See City of Keller*, 168 S.W.3d at 827.

When reviewing a factual sufficiency challenge, we set aside the jury's finding only if, after considering and weighing all the record evidence relevant to the jury's finding, we determine that the credible evidence supporting the finding is so weak or so contrary to the overwhelming weight of all the evidence that the finding should be set aside and a new trial ordered. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

The plaintiff had the burden to secure a "yes" answer to the question that asked whether Burnham's negligence was a proximate cause of the accident. Although a "yes" answer must be supported by a preponderance of the evidence, a "no" answer need not be supported by affirmative evidence or a preponderance of the evidence because to do so would incorrectly shift the burden of proof. *See In re Thibodeaux*, No. 09-20-00255-CV, 2020 Tex. App. LEXIS 10354, at *11 (Tex. App.—Beaumont Dec. 30, 2020, orig. proceeding) (mem. op.) (citing *Clophus v. Gen. Motors Corp.*, 769 S.W.2d 669, 670 (Tex. App.—Houston [14th Dist.] 1989, no writ)); *Sanchez v. Braye*, No. 09-17-00109-CV, 2018 Tex. App. LEXIS 7535, at *11 (Tex. App.—

25

Beaumont Sept. 13, 2018, no pet.) (mem. op.) (citing *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex. 1973); *Clark v. Cotten*, 573 S.W.2d 886, 888 (Tex. App.—Beaumont 1978, writ ref'd n.r.e.)).

"Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another." *City of Keller*, 168 S.W.3d at 819. When provided with alternative theories, the jury is free to determine which to credit. *Gunn*, 554 S.W.3d at 677 (citing *Hous. Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 833 (Tex. 2014); *City of Keller*, 168 S.W.3d at 819). We assume the jury decided all credibility issues in favor of the verdict if reasonable human beings could do so. *City of Keller*, 168 S.W.3d at 819.

Appellees argue that Appellants failed to preserve error on their factual sufficiency challenge.

> No evidence points must be preserved through one of the following procedural steps in the trial court: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or, (5) a motion for new trial.

*Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985). A motion for new trial is required to preserve error on factual sufficiency. *See* Tex. R. Civ. P. 324(b)(2). Although Appellants filed a motion for new trial, the motion only

raised issues about the admission or exclusion of evidence, and it did not challenge the legal sufficiency of the evidence on negligence.

Even assuming without deciding that Appellants preserved error on their legal and factual sufficiency challenges, we conclude that the evidence at trial was sufficient to support the jury's findings. Deferring to the jury's weight and credibility determinations, and crediting the evidence supporting the jury's "no" answer to question one that a reasonable factfinder could credit, and disregarding contrary evidence that a reasonable factfinder could not, some evidence exists supporting the jury's finding that Wyatt was negligent and that Burnham either was not negligent or his negligence, if any, was not a proximate cause of the accident. *See Dow Chem. Co.*, 46 S.W.3d at 241. Burnham testified that he looked left three times before entering the intersection, and the last time he looked, he only saw the SUV. Dr. James, the accident reconstructionist for the Appellees, testified that he determined that the Corvette was traveling "at least 92 miles an hour[]" at the time it struck the back of the trailer and that at that speed, Wyatt could have cleared the trailer by braking lightly. Trooper Snelgrooes testified that the speed limit at that section of the highway is 75 miles an hour. Dr. James also testified that Burnham made "a good turn[.]" Dr. Snodgrass, a double-board-certified toxicologist, testified that the blood sample taken from Wyatt postmortem showed 5.9 nanograms of marijuana and 910 nanograms of methamphetamine. Snodgrass testified that these two substances have

27

additive effects, they cause decreased reactive time, cognitive dysfunction, and a decreased ability to perceive the environment, and they would render the user unsafe to drive. The jury, in its role as sole judge of the credibility of the witnesses and the weight to be given to the testimony, could have chosen to believe some, all, or part of the testimony. *See City of Keller*, 168 S.W.3d at 819. We presume that reasonable jurors resolved conflicting evidence in favor of the prevailing party. *See id.* at 821. We cannot say the jury's answers in question one are against the great weight and preponderance of the evidence. *See Gardiner*, 505 S.W.3d at 615.

Appellants cite to *McWilliams v. Muse*, 300 S.W.2d 643 (Tex. 1957) in arguing that the Texas Supreme Court has "established that the statutory right of way is absolute barring evidence that the party with the right of way disregarded his safety and the safety of others by failing to exercise ordinary care by yielding in order to avoid a collision." However, in *McWilliams*, the Supreme Court stated "a statutory right-of-way rule is not absolute but relative[.]" 300 S.W.2d at 113. A driver who has the right-of-way must nonetheless exercise ordinary care. *See Stanley v. S. Pac. Co.*, 466 S.W.2d 548, 553 (Tex. 1971). Section 545.351 of the Transportation Code requires that a motor vehicle operator "may not drive at a speed greater than is reasonable and prudent under the circumstances then existing[,]" "shall control the speed of the vehicle as necessary to avoid colliding with another person or vehicle[,]" and shall "drive at an appropriate reduced speed if [] the

28

operator is approaching and crossing an intersection[.]" *See* Tex. Transp. Code Ann. § 545.351 (a), (b)(2), (c)(1). In this case the jury could have believed that Wyatt was traveling at a speed greater than was reasonable and prudent under the circumstances, that he failed to exercise ordinary care, or that he disregarded the safety of himself and others, and we conclude that *McWilliams* would not require a different result. *See McWilliams*, 300 S.W.2d at 113 (the statutory right-of-way "is subject to the qualification that a person entitled to claim such right will exercise it with proper regard for the safety of himself and others[]"). We overrule Appellants' fourth issue.

Having overruled all of Appellants' issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 11, 2020
Opinion Delivered January 28, 2021

Before Kreger, Horton and Johnson, JJ.